**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **CITY OF BRUNDIDGE, ALABAMA** ) ) ) | |
| Plaintiff, ) ) ) | **CIVIL ACTION NO.** |
| ) | **2:06cv1066-MEF** |
| v. ) ) | [Case No. CV-06-0275-JWK in |
| **BRUNDIDGE LANDFILL, LLC,** ) | Circuit Court of Pike County, |
| **ALLIED WASTE INDUSTRIES,** ) | Alabama] |
| **INC., ALLIED WASTE NORTH** ) | |
| **AMERICA, INC.,** ) | Opposed Motion |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MOTION TO REMAND**

**COMES NOW** the Plaintiff, the City of Brundidge, Alabama (hereinafter referred as "the City" or "Plaintiff") in the above-styled cause, by and through its undersigned counsel of record, and moves this Honorable Court to remand this case to the Circuit Court of Pike County, Alabama, from which it was removed by Defendants Brundidge Landfill, LLC, Allied Waste Industries, Inc., and Allied Waste North America, Inc. (collectively hereinafter referred to as "the Defendants"). In support of this motion, the City states unto the Court as follows:

## STATEMENT OF FACTS

**Plaintiff's Complaint**

1.  This action was commenced on or about October 26, 2006, when the City filed suit in the Circuit Court of Pike County, Alabama, CV-06-0275-JWK, against Defendants Brundidge Landfill, LLC, Allied Waste Industries, Inc., and Allied Waste North America, Inc.. *See* Complaint.

2.  The controversy at issue arises from the Defendants' breach of a May 1, 2002 agreement (hereinafter referred to as "the Agreement") entered into between the City of Brundidge and Brundidge Landfill, LLC for the development, operation, and management of a landfill (hereinafter referred to as "the Landfill") located within the City of Brundidge, Alabama. *See* Plaintiff's Complaint and Defendant's Notice of Removal, at para. 15.

3.  The Agreement was for a stated term of three (3) years, renewable at the option of the City for successive additional terms of three (3) years, without limitation. *See* Agreement at para. 1. The Agreement renewed automatically on May 1, 2005.

4.  In negotiations relating to the Agreement, Defendants made representations and promises to the City without any present intention of performing them. The City's revenues are derived from fees assessed on each ton entering the

Landfill, and representatives of Brundidge Landfill, LLC represented to the City they intended to direct a minimum of 1,200 tons per day on a monthly average of waste to the Landfill. Despite their representations and promises, the Defendants never directed more than 570 tons per day on a monthly average to the Landfill. Presently, Brundidge Landfill, LLC directs less than ninety-six (96) tons per day on a monthly average to the Landfill. As a result, the City has been damaged by Defendants' failure to honor the terms of the Agreement.

5. The Agreement also provides that Brundidge Landfill is responsible for keeping the Landfill "open to the City between the hours of 4:00 a.m. and 5:00 p.m., local time, Monday through Friday, and 4:00 a.m. to 12:00 p.m. Sunday. However, the Defendants have failed to comply with the terms of the Agreement and have failed to keep the Landfill open during the specified hours.

6. Defendant's promises and representations to the City were material both to the City's determination to enter into the Agreement with Brundidge Landfill, LLC and the City's decision to provide expanded host governmental approval for the Landfill.

7. On September 12, 2006, pursuant to the terms of the Agreement, the City provided written notice to Brundidge Landfill, LLC of its breach of the Agreement and gave the Defendants 30 days to come within compliance. To date, the

Defendants have failed to comply with the terms of the Agreement.

8.	Plaintiff brings claims against all Defendants for fraud and deceit (Count I), breach of contract (Count II), and promissory estoppel (Count IV), and seeks declaratory judgment that the Agreement is terminated and is now null and void because of Defendants' breach of the agreement (Count III). Plaintiff also brings an alter ego claim (Count V) against Allied Waste Industries, Inc. and Allied Waste North America, Inc., alleging that Brundidge Landfill, LLC is the alter ego of those companies and that the Defendants should be held jointly and severally liable. Plaintiff's Complaint does not seek any specific dollar amount, but instead requests judgment against the Defendants for compensatory and punitive damages, attorneys' fees and costs, interest, and such other relief as may be awarded. *See* Complaint.

9.	No basis for diversity jurisdiction exists based on a reading of the four corners of Plaintiff's Complaint, which does not request any specific dollar amount in damages and which identifies the principal place of business of Brundidge Landfill, LLC as being the State of Alabama, where the contract at issue was formed, where the Landfill is located, and where the acts giving rise to this Complaint took place. *See* Complaint.

**Defendants' Notice of Removal**

10.	On November 29, 2006, Defendants filed a Notice of Removal. In their

Notice of Removal (hereinafter referred to as "the Notice"), the Defendants allege that this court has jurisdiction of this matter under 28 U.S.C. § 1332 (diversity jurisdiction).

11.   Specifically, Defendants allege that Brundidge Landfill, LLC is a Delaware Corporation with its principal place of business in Phoenix, Arizona. *See* Notice, at para. 4. Defendants cite no facts or evidence in support of their contention that Brundidge Landfill, LLC maintains its principal place of business in Arizona. *See id.* Defendants also allege that Defendant Brundidge Landfill, LLC is a limited liability company and that the sole member of Brundidge Landfill, LLC is Defendant Allied Waste North America, Inc. *See* Notice, at para. 11-12; *see also* Ex. C to Defendant's Notice and Ex. 1 thereto (Affidavit of Jo Lynn White and accompanying 10/05/99 Operating Agreement for Brundidge Landfill, LLC).

12.   Defendants allege that Allied Waste Industries, Inc. is a Delaware corporation with its principal place of business in Phoenix, Arizona. *See* Notice, at para. 5. However, Defendants cite no facts or evidence in support of their contention that Allied Waste Industries, Inc. maintains its principal place of business in Arizona. *See id.*

13.   Defendants allege that Allied Waste North America, Inc. is a Delaware corporation with its principal place of business in Phoenix, Arizona. *See* Notice, at

para. 6. However, Defendants cite no facts or evidence in support of their contention that Allied Waste North America, Inc. maintains its principal place of business in Arizona. *See id.*

14. Defendants allege that none of the named Defendants can be considered a resident of the State of the Alabama and that there is, therefore, complete diversity among the named parties to this action. *See* Notice, at para. 8 - 13.

15. Defendants argue that removal is appropriate in that they contend this court maintains diversity jurisdiction over this matter under 28 U.S.C. § 1332 and that this matter was properly removed from the Circuit Court of Pike County, Alabama, under the requirements set forth in 28 U.S.C. §§ 1441 and 1446(b). *See* Notice, at para. 26 - 32.

## **ARGUMENT**

### **THIS MATTER SHOULD BE REMANDED TO THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA.**

The general rules regarding the determination of whether federal jurisdiction is present and whether a case that has been removed to federal court should be remanded are clear. It is black letter law that "[f]ederal courts are courts of limited jurisdiction" and "[t]hey may only hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *Kokkonen v. Guardian Life*

*Ins. Co. of America*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Furthermore, "[t]he Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear. *Retirement Systems of Alabama ("RSA") v. Merrill Lynch*, 209 F. Supp.2d 1257, 1259 (M.D. Ala. 2002) (internal citations omitted); *Rayfield v. Nat'l Auction Group, Inc.*, 878 F. Supp. 203, 206 (M.D. Ala. 1995) ("Because the removal statutes are strictly construed against removal, generally speaking, all doubts about removal must be resolved in favor of remand.").

Thus, the "party invoking the court's jurisdiction bears the burden of proving, by preponderance of the evidence, facts supporting the existence of federal jurisdiction." *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002); *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996), *cert. denied*, 520 U.S. 1162, 117 S.Ct. 1349, 137 L.Ed.2d 506 (1997); *see also Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ("It is to be presumed that a cause lies outside this limited jurisdiction... and the burden of establishing the contrary rests upon the party asserting jurisdiction.").

Removal of a case from state court to federal court is proper if the case is one which could have been originally brought in federal court. *See* 28 U.S.C. § 1441. The diversity jurisdiction statute confers subject matter jurisdiction over a civil action

in cases involving state law claims where the matter in controversy exceeds the jurisdictional amount ($75,000, exclusive of interest and costs) and is between "citizens of different States." 28 U.S.C. § 1332(a)(1). The statutory requirement that such actions be between citizens of different states has been judicially interpreted to require "complete diversity." *Howell v. Circuit City*, 330 F. Supp.2d 1314 (M.D. Ala. 2004) (citing *Strawbridge v. Curtiss*, 7 U.S. 267, 2 L.Ed.2d 435 (1806)).

"When a court is reviewing the citizenship of the parties to determine if the suit meets the requirements of diversity jurisdiction, the court must look to the citizenship of the parties at the time the action was filed and at the time of removal." *Audi Performance & Racing, LLC v. Kasberger*, 273 F. Supp.2d 1220, 1225 (M.D. Ala. 2003).

### Citizenship of LLC's

In *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020 (11th Cir. 2004) (hereinafter referred to as "*Rolling Greens*"), the Eleventh Circuit raised the issue of subject matter jurisdiction *sua sponte* in order to address the issue of how to determine the citizenship of a limited liability company (hereinafter referred to as "LLC") for purposes of establishing diversity jurisdiction. *Id.* at 1021. Prior to *Rolling Greens*, the Eleventh Circuit had not addressed the issue of how to determine the citizenship of an LLC for purposes of establishing diversity

jurisdiction. *Id.* at 1022. However, the Eleventh Circuit noted that the United State Supreme Court had already settled the issue of how a limited partnership is determined for diversity jurisdiction purposes, holding that, unlike corporations (which are deemed to be citizens of their state(s) of incorporation, as well as the state of their principal place of business), "a limited partnership is a citizen of each state in which any of its partners, limited or general, are citizens." *Rolling Greens*, 374 F.2d at 1021-22 (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96, 110 S.Ct. 1015, 1021, 108 L.Ed.2d 157 (1990)). In addressing the issue of how the citizenship of an LLC is determined, the Eleventh Circuit adopted the rule previously adopted by other circuit courts of appeal, stating that "[t]he federal appellate courts that have answered this question have all answered it in the same way: like a limited partnership, a limited liability company is a citizen of any state of which a member of the company is a citizen. We join them in this holding." *Id.* at 1022.

### Citizenship of Corporations

"Corporations have duel citizenship for the purposes of diversity jurisdiction." *Fritz v. American Home Shield Corp.*, 751 F.2d 1152, 1153 (11th Cir. 1985). Thus, a corporation is deemed to be a citizen of both its place(s) of incorporation and its principal place of business. *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State

where it has its principal place of business..."); *see also Mercury Finance Corp. of Alabama v. Aetna Cas. & Sur. Co. of Illinois*, 900 F. Supp. 390, 392-93 (M.D. Ala. 1995) ("Under the statute a corporation has dual citizenship and is deemed a citizen of *every* state where incorporated and also of the *one* state in which it has its principal place of business") (emphasis original).

For the purpose of determining a corporation's principal place of business, the Eleventh Circuit has adopted the "total activities" test. *See Mercury Finance Corp. of Alabama v. Aetna Cas. & Sur. Co. of Illinois*, 900 F. Supp. 390, 393 (M.D. Ala. 1995). The "total activities" test involves a fact-sensitive inquiry by the court and incorporates both the "place of activities" test (which focuses on production or sales activities) and the "nerve center" test (which emphasizes the concentration of the managerial and policymaking functions of the corporation). *See Sweet Pea Marine, Ltd. v APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005) (quoting *Vareka Investments, N.V. v. American Inv. Properties, Inc.*, 724 F.2d 907, 910 (11th Cir. 1984)); *see also Mercury Finance Corp. of Alabama v. Aetna Cas. & Sur. Co. of Illinois*, 900 F. Supp. 390, 393 (M.D. Ala. 1995).

"Nerve Center" Test

"The 'nerve center' test originated in *Scot Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862 (S.D.N.Y. 1959) and provides that if a corporation is involved in

dispersed and multi-state operations, the principal place of business is the state where the executive and administrative decisions take place." *Mercury Fin. Corp.*, 900 F. Supp. at 393. In that case, the corporation at issue had manufacturing facilities in a number of different states, leading the court to conclude that the principal place of business was best identified as being the corporation's New York executive offices. *Id.* However, in so holding the court emphasized that the "nerve center" test should be restricted to corporations that are involved in activities in multiple states, thereby making the principal place of business hard to identify. *Id.* (citing *Scot* at 865).

"Place of Activities" Test

"The 'place of activities' test focuses on the corporation's center of production or service activities. In other words, when a corporation has its executive offices in one state and its physical operation wholly or predominantly in another state, the principal place of business is the state where the physical operations are conducted." *Mercury Fin. Corp.*, 900 F. Supp. at 393. This test was introduced in *Kelly v. United States Steel Corp.*, 284 F.2d 850 (3rd Cir. 1960). In that case, the court held that Pennsylvania, which was the site of the company's largest production plant and the location where most of its employees were located and worked, was the principal place of business as opposed to New York, which was where the board of directors lived and met and where the company filed taxes, carried on banking activities, and

managed its government securities and pension plans. *See Mercury Fin.* Corp., 900 F. Supp. at 393.

<u>Relationship between the "Nerve Center" and "Place of Activities" Tests</u>

A court should not rigidly apply either the "nerve center" or "place of activities" test. *Id.* at 394. Rather, "[t]he ultimate question is not which test to apply, but rather which consideration, on the basis of the totality of the facts, predominates. *Id.* (*quoting J.A. Olson Co. v. City of Winona, Miss.*, 818 F.2d 401, 406 (5th Cir. 1987)) (hereinafter "*Olson*"). Thus, application of the two-prongs of the "total activities" test has been described as follows:

> neither the "nerve center" nor the "place of activity" test inflexibly dictates the corporation's principal place of business. Rather the tests simply stand for the general rules regarding the determination of a particular corporation's principal place of business: the principal place of business of a corporation with significant administrative authority and activity in one state and lesser executive offices but principal operations in another state is generally the district of the former; and the principal place of business of a corporation with its corporate headquarters in one state and its single activity in another will generally be in the state of its operations. These rules, however, are applied on a case-by-case analysis, weighing the particular facts. The two tests are therefore not mutually exclusive but rather complimentary.

*Id.* at 394 (quoting *Olson*, 818 F.2d at 409). In making the determination as to a corporation's principal place of business, the court looks at all of a Defendant's

activities. *See Vareka Inv. v. American Inv. Prop., Inc.*, 724 F.2d 907, 910 (11th Cir. 1984).

> "Some relevant factors include: (1) the nature of the firm's activity, that is, whether it is 'active or passive' and 'labor-intensive or management-demanding'; (2) the number of locations where the firm operates; (3) the significance of the activity as it relates to the firm's purpose and the firm as a whole; (4) the amount of contact the firm has with the community; (5) the location of the firm's nerve center; and (6) the firm's structural rigidity and hierarchy. This is a pragmatic, functional inquiry."

*Howell v. Circuit City*, 330 F. Supp.2d 1314, 1316-1317 (M.D. Ala. 2004) (citing *Mercury Fin. Corp. v. Aetna Cas. & Sur. Co.*, 900 F. Supp. 390, 393-94 (M.D. Ala. 1995)).

"Businesses that emphasize production and sales are likely to be linked to the state of production and physical operations. On the other hand, businesses that emphasize managerial and technical activities are likely to be linked to the state where their business decisions are made." *Wheelwright Trucking Co. v. Dorsey Trailers, Inc.*, 158 F. Supp.2d 1298, 1302 (M.D. Ala. 2001) (holding that Dorsey – which was an active, labor-intensive firm that manufactured flatbeds, trailers, and trucks – had its principal place of business in the state where it had the bulk of its physical operations).

**Application of the Tests to the Present Matter**

Here, the Defendants have completely failed to sustain their burden of establishing the principle place of business of the corporate Defendants. Defendants make a factual allegation in their removal petition that all three of the named Defendants maintain their principle place of business in the State of Arizona. However, Defendants fail to provide any facts or any evidence to support those claims. In contrast, there is simply no evidence before the court that establishes that any of the Defendants has its principle place of business in Arizona. Moreover, no facts or evidence is provided from which the court could employ the tests outlined under Eleventh Circuit precedent or analyze the factors cited as relevant in Eleventh Circuit cases in order to even attempt to make such a determination. Similarly, as the only allegation made by the Defendants as to the citizenship of Brundidge Landfill, LLC relates to their claim that the LLC's only member is Allied Waste North America, Inc., it is also impossible to determine the citizenship of the LLC for diversity jurisdiction purposes.

This is not a burden that falls upon the Plaintiff. Rather, as discussed above in detail, Eleventh Circuit precedent clearly establishes that the burden of persuasion rests with the removing defendants to establish federal jurisdiction, which will not simply be assumed by the court to exist. *See, e.g., Kokkonen v. Guardian Life Ins.*

*Co. of America*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996), *cert. denied*, 520 U.S. 1162, 117 S.Ct. 1349, 137 L.Ed.2d 506 (1997); *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002); *RSA v. Merrill Lynch*, 209 F. Supp.2d 1257, 1259 (M.D. Ala. 2002); *Rayfield v. Nat'l Auction Group, Inc.*, 878 F. Supp. 203, 206 (M.D. Ala. 1995). Moreover, where there is any doubt as to the existence of such jurisdiction, the proper course of action is to remand the matter at issue to the state court from which it was removed. *Id.*

Here, the Landfill at issue is located within the limits of the City of Brundidge, Alabama, and all of the relevant acts and omissions surrounding the allegations made in Plaintiff's Complaint took place in Pike County. The Plaintiff and most of the witnesses who would need to be called are also in Pike County. Thus, given the Defendants' failure to meet their burden of proof with respect to establishing complete diversity and diversity jurisdiction, remand of this matter to the Circuit Court of Pike County, Alabama, is necessary.

## **CONCLUSION**

The Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear. Moreover, removal statutes are strictly construed against removal. Thus, the party invoking the federal court's jurisdiction bears the

burden of proving, by preponderance of the evidence, facts supporting the existence of federal jurisdiction. Where, as is the case here, Defendants fail to meet this burden, remand is the proper course of action. Notwithstanding that the burden of demonstrating federal jurisdiction is squarely placed upon them, the Defendants in this matter have failed to put forth any facts or evidence to establish the principal place of business of any of the Defendants. Thus, even if the jurisdictional amount has been satisfied, Defendants have failed to establish that there is complete diversity of citizenship, as is necessary to establish federal jurisdiction under 28 U.S.C. § 1332, which is the only basis for federal jurisdiction the Defendants have alleged.

**WHEREFORE**, the premises considered, Plaintiff respectfully requests that this Honorable Court remand the above-referenced action to the Circuit Court for Pike County, Alabama, from which it was improvidently removed by the Defendants.

Respectfully Submitted,

  /s   Caroline Smith Gidiere
One of the Attorneys for Plaintiff

OF COUNSEL:
Andrew P. Campbell
Caroline Smith Gidiere
CAMPBELL, WALLER & POER, LLC
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209

205-803-0051 Phone
205-803-0053 Fax

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of December, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

J. Banks Sewell, III
J. Chandler Bailey
C. Meade Hartfield
Lightfoot, Franklin & White, LLC
The Clark Building
400 North 20th Street
Birmingham, AL 35203-3200

Richard F. Calhoun
Calhoun, Faulk, Curtis & Faircloth, LLC
78 S. Court Square
P. O. Box 489
Troy, AL 36081


   /s   Caroline Smith Gidiere
Of Counsel