# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| CITY OF BRUNDIDGE, ALABAMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| BRUNDIDGE LANDFILL, L.L.C., | ) | 2:06 – cv-1066-MEF |
| ALLIED WASTE INDUSTRIES, INC., | ) | |
| ALLIED WASTE NORTH AMERICA, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | | |

## RESPONSE TO PLAINTIFF'S MOTION TO REMAND

Defendants Brundidge Landfill, L.L.C., Allied Waste Industries, Inc. and Allied Waste North America, Inc. ("Defendants") hereby respond to Plaintiff's motion to remand as follows:

1.     Defendants filed a Notice of Removal on November 29, 2006, on grounds of diversity jurisdiction under 28 U.S.C. § 1332. *See* Defendants' Notice of Removal.

2.     On December 27, 2006, Plaintiff moved to remand the case to state court, alleging that "[n]o basis for diversity jurisdiction exists based on a reading of the four corners of Plaintiff's Complaint, which does not request any specific

dollar amount in damages[1] and which identifies the principal place of business of Brundidge Landfill, L.L.C. as being the state of Alabama . . . ."  *See* Plaintiff's Motion to Remand, ¶ 9.  Plaintiff's focus on the principal place of business for Brundidge Landfill, L.L.C. is moot for purposes of determining diversity jurisdiction.  *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020 (11th Cir. 2004) (holding a limited liability company is a citizen of any state of which a member of the company is a citizen).  As Defendants demonstrated with its Notice of Removal, Defendant Brundidge Landfill, L.L.C. is a Delaware corporation whose sole member, Defendant Allied Waste North America, Inc., is <u>not</u> a resident of Alabama.  *See* Defendants' Notice of Removal and accompanying Affidavit of Jo Lynn White and Brundidge Landfill, L.L.C. Operating Agreement.

3.     Moreover, Plaintiff argues that "Defendants cite no facts or evidence in support of their contention" that Allied Waste North America, Inc. and Allied Waste Industries, Inc. maintain their respective principal places of business in Arizona.  *See* Plaintiff's Motion to Remand, ¶¶ 12, 13.  However, Plaintiff fails to cite any case requiring a removing party to submit evidence establishing

---

[1]  Although plaintiff makes this one vague admission to the amount in controversy, it does  not challenge in any way Defendants' proof set forth in its Notice of Removal that the jurisdictional amount in controversy requirement is met, nor does Plaintiff now stipulate that less than $75,000.00 is at issue.

citizenship where the complaint does not contain contradictory allegations. Plaintiff's complaint merely asserts that Allied Waste Industries, Inc. and Allied Waste North America, Inc. were "doing business by agent" in Alabama. *See* Plaintiff's Complaint, ¶¶ 3, 4. The complaint wholly fails to allege that these entities had their respective principal places of business in Alabama. *Id.* Accordingly, Plaintiff seeks to inject with its remand motion what if failed to assert in its complaint. Defendants understand the law to be that the removing party is not required to do any more than a party who files in federal court at the outset -- allege a corporate party's state of incorporation and principal place of business.

4.     While plaintiff's argument is most likely moot, out of an abundance of caution, Defendants attach as Exhibit A the affidavit of Jo Lynn White as further support for its assertion that the respective place of incorporation and principal places of business for Allied Waste Industries, Inc. and Allied Waste North America, Inc. are <u>not</u> located in Alabama. *See Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 949 (11th Cir. 2000) ("We align ourselves with our sister circuits in adopting a more flexible approach, allowing the district court when necessary to consider post-removal evidence in assessing removal jurisdiction."). Thus, both of these entities are citizens of other states, and because neither of these citizens are Alabama residents, this Court has jurisdiction. Put simply, these two defendants are diverse, as is Brundidge Landfill L.L.C., regardless of its physical

location, because the test for citizenship of an L.L.C. is through citizenship of its members. Because Allied Waste North America is a diverse foreign citizen, and it is Brundidge Landfill L.L.C.'s sole member, then Brundidge Landfill L.L.C. is a diverse foreign citizen.

5.     Plaintiff's complaint centers around Brundidge Landfill, L.L.C., and the development, operation, and management of a landfill located within the City of Brundidge, Alabama. *See* Plaintiff's Motion to Remand, ¶ 2; *see generally* Plaintiff's Complaint. Brundidge Landfill, L.L.C., while operating within the state, is not considered a citizen of Alabama for purposes of diversity jurisdiction. Further, Allied Waste Industries, Inc. and Allied Waste North America, Inc. are not Alabama companies by any applicable definition, but instead are Delaware corporations, maintaining executive offices in Arizona, and engaging in business activities all over the country. Plaintiff 's position neither complies with established precedent nor does it abrogate Defendant's Constitutional right to diversity removal from a state court venue with implicit loyalties to the city. *See Bolling v. Union National Life Ins. Co.*, 900 F. Supp. 400, 405 (M.D. Ala. 1995) (federal court should be cautious about remand, lest it erroneously deprive defendant of its right to a federal forum).

WHEREFORE, Defendants request that the Court deny Plaintiff's motion to remand.

/s/ C. Meade Hartfield
One of the Attorneys for Defendants

OF COUNSEL:
J. Banks Sewell, III
J. Chandler Bailey
C. Meade Hartfield
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama  35203-3200
(205) 581-0700
(205) 581-0799 (fax)

## **CERTIFICATE OF SERVICE**

I hereby certify that on January, 18, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Andrew P. Campbell
Caroline Smith Gidiere
CAMPBELL, WALLER & POER, LLC
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209
205.803.0051
Fax: 205.803.0053

Richard F. Calhoun
CALHOUN, FAULK, CURTIS & FAIRCLOTH, LLC
78 S. Court Square
P.O. Box 489
Troy, AL 36081
334.566.7200

and I hereby certify that I have mailed by United States Postal Service the
document to the following non-CM/ECF participants:


  /s/ C. Meade Hartfield
Of Counsel

<u>**AFFIDAVIT OF JO LYNN WHITE**</u>

STATE OF <u>Arizona</u>    )
                      )
<u>Maricopa</u>    COUNTY    )

On this day appeared before me, the undersigned notary public, Jo Lynn White, who is personally known to me and who upon his oath deposed and stated as follows:

1.    My name is Jo Lynn White. I am the Assistant Secretary of Allied Waste Industries, Inc. and Allied Waste North America, Inc. I am over the age of 19 years, of sound mind, suffer no legal disabilities, and am fully competent in all respects to make this affidavit. I have personal knowledge of the matters stated herein, and such matters are true and correct to the best of my knowledge. In my capacity as Assistant Secretary, I am familiar with the corporate formation of Allied Waste Industries, Inc. and Allied Waste North America, Inc.

3.    Allied Waste Industries, Inc. is a Delaware corporation. Demonstrating the same, attached as Exhibit 1 is a true and correct copy of the Articles of Incorporation for Allied Waste Industries, Inc., which is maintained and kept in the ordinary course of business. Allied Waste Industries, Inc. is registered to do business in Arizona and California.

4.    Allied Waste Industries, Inc. maintains its corporate office and principal place of business in Arizona. Demonstrating the same, attached as Exhibits 2 and 3 are copies of the company's 1999 and 2006 Corporation Annual Report and Certificate of Disclosure, filed with the Arizona Secretary of State and available from the Arizona Corporation Commission's Public Access System, found at http://www.azcc.gov. These filings demonstrate that the company's headquarters have been located at 15880 N. Greenway-Hayden Loop, Suite 100, Scottsdale, Arizona, 85260. On November 13, 2006, the corporate office of Allied Waste moved to 18500

North Allied Way, Phoenix, Arizona, 85054. The company is in the process of filing a change of address with the Arizona Secretary of State's office.

5.    Allied Waste North America, Inc is a Delaware corporation. Demonstrating the same, attached as Exhibit 4 is a true and correct copy of the Articles of Incorporation for Allied Waste North America, Inc, which is maintained and kept in the ordinary course of business. Allied Waste North America, Inc. is registered to do business in Arizona, Alabama, Illinois, Missouri, North Carolina, Ohio, and Texas.

6.    Allied Waste North America, Inc. maintains its corporate office and principal place of business in Arizona. Demonstrating the same, attached as Exhibits 5 and 6 are copies of the company's 1999 and 2006 Corporation Annual Report and Certificate of Disclosure, filed with the Arizona Secretary of State and available from the Arizona Corporation Commission's Public Access System, found at http://www.azcc.gov.    These filings demonstrate that the company's headquarters have been located at 15880 N. Greenway-Hayden Loop, Suite 100, Scottsdale, Arizona, 85260. On November 13, 2006, the corporate office of Allied Waste moved to 18500 North Allied Way, Phoenix, Arizona, 85054. The company is in the process of filing a change of address with the Arizona Secretary of State's office.

Further affiant sayeth not.

_____
JO LYNN WHITE

Subscribed and sworn to before me this
17th day of January , 2007

_____
Notary Public

My Commission Expires: 9/17/08

Notary Public State of Arizona
Maricopa County
Susanne A Webb
Expires September 17  2008

*State of Delaware*                                    PAGE   1

# Office of the Secretary of State

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE RESTATED CERTIFICATE OF "ALLIED WASTE INDUSTRIES, INC.", FILED IN THIS OFFICE ON THE EIGHTH DAY OF AUGUST, A.D. 1997, AT 2:21 O'CLOCK P.M.

A CERTIFIED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS FOR RECORDING.

*Edward J. Freel, Secretary of State*

2202248   8100

971267000

AUTHENTICATION:         8604385

DATE:         08-13-97

**EXHIBIT**

1

RESTATED CERTIFICATE OF INCORPORATION
OF
ALLIED WASTE INDUSTRIES, INC.

Allied Waste Industries, Inc., a corporation organized and existing under the laws of the State of Delaware, hereby certifies as follows:

FIRST: The corporation's present name is Allied Waste Industries, Inc. The date of the filing of its original Certificate of Incorporation with the Secretary of State of the State of Delaware was July 14, 1989.

SECOND: This Restated Certificate of Incorporation has been duly adopted pursuant to and in accordance with Section 245 of the General Corporation Law of the State of Delaware and only restates and integrates and does not further amend the provisions of the corporation's existing Certificate of Incorporation as amended, and there is no discrepancy between those provisions and the provisions of the Restated Certificate of Incorporation of the corporation.

THIRD: The Certificate of Incorporation of the corporation is hereby restated so as to read in its entirety as follows:

ARTICLE I

The name of the corporation is ALLIED WASTE INDUSTRIES, INC.

ARTICLE II

The address of the corporation's registered office in the State of Delaware is 1209 Orange Street, New Castle County, Wilmington, Delaware 19801. The name of its registered agent at such address is The Corporation Trust Company.

ARTICLE III

The purpose for which the corporation is organized is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

ARTICLE IV

(a)  The total number of shares of all classes of stock which the corporation shall have authority to issue is two hundred ten million (210,000,000) shares, divided into the following classes: (i) 200,000,000 shares of common stock, par value $.01 per share ("Common Stock"), and (ii) 10,000,000 shares of preferred stock, par value $.10 per share ("Preferred Stock").

(b)  Shares of Preferred Stock may be issued from time to time in one or more series. The board of directors is hereby vested with the authority to fix by resolution the powers, designations, preferences and relative, participating, optional and other special rights of each series of Preferred Stock, including, without limitation, the dividend rate, conversion rights, voting rights, redemption price and liquidation preference, and the qualifications, limitations or restrictions on such preferences and/or rights and to fix the number of shares constituting any such series.

ARTICLE V

The governing board of the corporation shall be known as the board of directors, and the number of directors comprising the same shall be determined in accordance with the bylaws of the corporation.

## ARTICLE VI

The board of directors of the corporation is expressly and solely authorized to make, alter or repeal bylaws of the corporation.

## ARTICLE VII

No director of the corporation shall be personally liable to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director; provided, however, that the foregoing clause shall not apply to any liability of a director (i) for any breach of the director's duty of loyalty to the corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of the law, (iii) under Section 174 of the General Corporation Law of the State of Delaware, or (iv) for any transaction from which the director derived an improper personal benefit. This Article shall not eliminate or limit the personal liability of a director for any act or omission occurring prior to the date this Article becomes effective.

## ARTICLE VIII

8.1    The corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the corporation) by reason of the fact that he is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful.

8.2    The corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the corporation to procure a judgment in its favor by reason of the fact that he is or was a director, officer, employee or agent of

2

the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against expenses (including attorneys' fees) actually and reasonably incurred by him in connection with the defense or settlement of such action or suit if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation and except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable to the corporation unless and only to the extent that the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which the court shall deem proper.

8.3 To the extent that a director, officer, employee or agent of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in Sections 8.1 and 8.2 of this Article, or in defense of any claim, issue or matter therein, the corporation shall indemnify such director, officer, employee or agent against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith.

8.4 Any indemnification under Sections 8.1 and 8.2 of this Article (unless ordered by a court) shall be made by the corporation only as authorized in the specific case upon a determination that indemnification of the director, officer, employee or agent is proper in the circumstances because he has met the applicable standard of conduct set forth in Sections 8.1 and 8.2 of this Article. Such determination shall be made (1) by the board of directors by a majority vote of a quorum consisting of directors who were not parties to such action, suit or proceeding, or (2) if such a quorum is not obtainable, or, even if obtainable a quorum of disinterested directors so directs, by independent legal counsel in a written opinion, or (3) by the stockholders.

8.5 Expenses incurred by an officer or director in defending a civil or criminal action, suit or proceeding shall be paid by the corporation in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that he is not entitled to be indemnified by the corporation as authorized in this Article. Such expenses incurred by other employees and agents shall be so paid upon such terms and conditions, if any, as the board of directors deems appropriate.

8.6 The indemnification and advancement of expenses provided by, or granted pursuant to, this Article shall not be deemed exclusive of any other rights to which those seeking indemnification or advancement of expenses may be entitled under any bylaw, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in an official capacity and as to action in another capacity while holding such office.

8.7 The corporation shall have power to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint

3

venture, trust or other enterprise against any liability asserted against him and incurred by him in any such capacity, or arising out of his status as such, whether or not the corporation would have the power to indemnify him against such liability under the General Corporation Law of the State of Delaware or this Article.

8.8  For purposes of this Article, references to "the corporation" shall include, in addition to the resulting corporation, any constituent corporation (including any constituent of a constituent) absorbed in a consolidation or merger which, if its separate existence had continued, would have had power and authority to indemnify its directors, officers and employees or agents, so that any person who is or was a director, officer, employee or agent of such constituent corporation, or is or was serving at the request of such constituent corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, shall stand in the same position under the provisions of this Article with respect to the resulting or surviving corporation as he would have with respect to such constituent corporation if its separate existence had continued.

8.9  For purposes of this Article, references to "other enterprises" shall include employee benefit plans; references to "fines" shall include any excise taxes assessed on a person with respect to any employee benefit plan; and references to "serving at the request of the corporation" shall include any service as a director, officer, employee or agent of the corporation which imposes duties on, or involves services by, such director, officer, employee or agent with respect to an employee benefit plan, its participants or beneficiaries; and a person who acted in good faith and in a manner he reasonably believed to be in the interest of the participants and beneficiaries of an employee benefit plan shall be deemed to have acted in a manner "not opposed to the best interests of the corporation" as referred to in this section.

8.10  The indemnification and advancement of expenses provided by, or granted pursuant to, this Article shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of the heirs, executors and administrators of such a person.

ARTICLE IX

Whenever a compromise or arrangement is proposed between the corporation and its creditors or any class of them and/or between the corporation and its stockholders or any class of them, any court of equitable jurisdiction within the State of Delaware may, on the application in a summary way of the corporation or of any creditor or stockholder thereof or on the application of any receiver or receivers appointed for the corporation under the provisions of section 291 of the General Corporation Law of the State of Delaware or on the application of trustees in dissolution or of any receiver or receivers appointed for the corporation under the provisions of section 279 of the General Corporation Law of the State of Delaware, order a meeting of the creditors or class of creditors, and/or of the stockholders or class of stockholders of the corporation, as the case may be, to be summoned in such manner as the court directs. If a majority in number, representing three-fourths in value, of the creditors or class of creditors, and/or of the stockholders or class of stockholders of the corporation, as the

4

case may be, agree to any compromise or arrangement and to any reorganization of the corporation as a consequence of such compromise or arrangement and the said reorganization shall, if sanctioned by the court to which the said application has been made, be binding on all the creditors or class of creditors, and/or on all of the stockholders or class of stockholders, of the corporation, as the case may be, and also on the corporation.

### ARTICLE X

The corporation is to have perpetual existence.

IN WITNESS WHEREOF, Allied Waste Industries, Inc. has caused this Restated Certificate of Incorporation to be executed by Peter S. Hathaway, the Vice President and Chief Accounting Officer of the corporation, this 8th day of August, 1997.

ALLIED WASTE INDUSTRIES, INC.

By: _____

Peter S. Hathaway
Vice President, Chief Accounting Officer

6

*State of Delaware*

## Office of the Secretary of State

PAGE   1

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF AMENDMENT OF "ALLIED WASTE
INDUSTRIES, INC.", FILED IN THIS OFFICE ON THE FIFTEENTH DAY OF
OCTOBER, A.D. 1998, AT 3:45 O'CLOCK P.M.



*Edward J. Freel, Secretary of State*

AUTHENTICATION:     9426197

2202248   8100

981454550

DATE:     11-25-98

# CERTIFICATE OF AMENDMENT
## OF
## RESTATED CERTIFICATE OF INCORPORATION
### OF
### ALLIED WASTE INDUSTRIES, INC.

Pursuant to Section 242 of the Delaware General Corporation Law ("DGCL"), Allied Waste Industries, Inc., a Delaware corporation (the "Corporation"), does hereby certify that:

1.    At a meeting of the Board of Directors of the Corporation held on August 10, 1998, resolutions were duly adopted setting forth a proposed amendment of the Restated Certificate of Incorporation of the Corporation, declaring such amendment to be advisable and calling a meeting of the stockholders of the Corporation for consideration of such amendment. The resolution setting forth the proposed amendment is as follows:

RESOLVED, that the Restated Certificate of Incorporation of the Corporation be amended by deleting paragraph (a) of Article IV thereof in its entirety and inserting in its place the following:

"(a) The total number of shares of all classes of stock which the corporation shall have authority to issue is three hundred ten million (310,000,000) shares, divided into the following classes: (i) 300,000,000 shares of common stock, par value $.01 per share ("Common Stock"), and (ii) 10,000,000 shares of preferred stock, par value $.10 per share ("Preferred Stock")."

2.    The amendment was duly adopted by the stockholders of the Corporation at a special meeting of the stockholders duly called and held, upon notice in accordance with Section 222 of the DGCL.

3.    The amendment was duly adopted in accordance with the provisions of Section 242 of the DGCL.

IN WITNESS WHEREOF, Allied Waste Industries, Inc. has caused this Certificate of Amendment to be signed by Peter S. Hathaway, its Vice President and Chief Accounting Officer, this 15th day of October, 1998.

ALLIED WASTE INDUSTRIES, INC.

By: /s/ Peter S. Hathaway
Peter S. Hathaway
Vice President, Chief Accounting Officer

235603

CERTIFICATE OF AMENDMENT

OF

RESTATED CERTIFICATE OF INCORPORATION

* * * * *

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 01/24/2003
030049650 — 2202248

ALLIED WASTE INDUSTRIES, INC., a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware (the "Corporation"),

DOES HEREBY CERTIFY:

FIRST:  That at a meeting of the Board of Directors of the Corporation resolutions were duly adopted setting forth a proposed amendment to the Restated Certificate of Incorporation of said corporation, declaring said amendment to be advisable and calling a meeting of the stockholders of the Corporation for consideration thereof.  The resolution setting forth the proposed amendment is as follows:

RESOLVED, that the Restated Certificate of Incorporation of the Corporation be amended by deleting paragraph (a) of Article IV thereof in its entirety and inserting in its place the following:

"(a) The total number of shares of all classes of stock which the corporation shall have authority to issue is five hundred thirty-five million (535,000,000) shares, divided into the following classes:  (i) 525,000,000 shares of common stock, par value $.01 per share ("Common Stock"), and (ii) 10,000,000 shares of preferred stock, par value $.10 per share ("Preferred Stock")."

SECOND:  The amendment was duly adopted by the stockholders of the Corporation at a special meeting of the stockholders duly called and held, upon notice in accordance with Section 222 of the General Corporation Law of the State of Delaware, at which meeting the necessary number of shares as required by statute were voted in favor of the amendment.

THIRD:  That said amendment was duly adopted in accordance with the provisions of Section 242 of the General Corporation Law of the State of Delaware.

IN WITNESS WHEREOF, Allied Waste Industries, Inc. has caused this

certificate to be signed by Steven M. Helm, its Vice President, Legal and Corporate Secretary, this 23rd day of January, 2003.

ALLIED WASTE INDUSTRIES, INC., a
Delaware corporation

By _____

Steven M. Helm
Vice President, Legal and
Corporate Secretary

PHX01 – 8/21/01 – CT Systems Online

# Delaware

PAGE 1

### The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF DESIGNATION OF "ALLIED WASTE
INDUSTRIES, INC.", FILED IN THIS OFFICE ON THE EIGHTH DAY OF
APRIL, A.D. 2003, AT 4:30 O'CLOCK P.M.



Harriet Smith Windsor
Harriet Smith Windsor, Secretary of State

2202248   8100

AUTHENTICATION: 2355435

*STATE OF DELAWARE*
*SECRETARY OF STATE*
*DIVISION OF CORPORATIONS*
*FILED 04:30 PM 04/08/2003*
*030232097 — 2202248*

# CERTIFICATE OF DESIGNATIONS OF

# 6 1/4% SERIES C SENIOR MANDATORY CONVERTIBLE PREFERRED STOCK

## OF ALLIED WASTE INDUSTRIES, INC.

Pursuant to Section 151 of the
General Corporation Law of the State of Delaware

Allied Waste Industries, Inc., a Delaware corporation (the "Company"), certifies that pursuant to the authority contained in Article IV of its Restated Certificate of Incorporation, as amended (the "Restated Certificate of Incorporation"), and in accordance with the provisions of Section 151 of the General Corporation Law of the State of Delaware (the "DGCL"), the Board of Directors of the Company (the "Board of Directors") by resolution adopted by unanimous written consent, pursuant to Section 141(f) of the DGCL, on April 8, 2003, duly approved and adopted the following resolution, which resolution remains in full force and effect on the date hereof:

> RESOLVED, that pursuant to the authority vested in the Board of Directors and by the Restated Certificate of Incorporation, the Board of Directors does hereby designate, create, authorize and provide for the issue of a series of the Company's preferred stock having a par value of $.10 per share, with a liquidation preference of $50.00 per share, subject to adjustment as provided in Section 12(ii) hereof (the "Liquidation Preference"), which shall be designated as 6 1/4% Series C Senior Mandatory Convertible Preferred Stock (the "Series C Senior Mandatory Convertible Preferred Stock") consisting of 6,900,000 shares, no shares of which have heretofore been issued by the Company, having the following powers, designations, preferences and relative, participating, optional and other special rights, and qualifications, limitations and restrictions thereof:

Section 1. <u>Ranking</u>. The Series C Senior Mandatory Convertible Preferred Stock shall rank, with respect to dividend distributions and distributions upon the liquidation, winding-up and dissolution of the Company (i) senior to the common stock, par value $.01 per share, of the Company (the "Common Stock"), the Series B Junior Participating Preferred Stock, par value $.10 per share, of the Company and to each other class or series of stock of the Company (including any series of preferred stock established after April 3, 2003 by the Board of Directors) the terms of which do not expressly provide that such class or series will rank senior to or pari passu with the Series C Senior Mandatory Convertible Preferred Stock as to dividend distributions and distributions upon the liquidation, dissolution or winding up of the Company (collectively referred to as "Junior Securities"); (ii) pari passu with the Company's Series A Senior Convertible Preferred Stock (the "Series A Senior Convertible Preferred Stock") and to each other class or series of stock of the Company, the terms of which expressly provide that such class or series will rank pari passu with the Series C Senior Mandatory Convertible Preferred Stock as to dividend distributions and distributions upon liquidation, dissolution or winding up of the Company (collectively referred to as "Parity Securities"); and (iii) junior to each other class or series of stock of the Company, the terms of which expressly provide that such class or series will rank senior to the Series C Senior Mandatory Convertible Preferred Stock as to dividend distributions and distributions upon liquidation, dissolution or winding up of the Company (collectively referred to as "Senior Securities").

## Section 2. Dividends.

(i) General. Dividends on the Series C Senior Mandatory Convertible Preferred Stock shall be payable quarterly, when, as and if declared by the Board of Directors or a duly authorized committee thereof, out of the assets of the Company legally available therefor, on the first calendar day (or the following Business Day if the first is not a Business Day) of January, April, July and October of each year (each such date being referred to herein as a "Dividend Payment Date") at the annual rate of $3.125 per share subject to adjustment as provided in Section 12(ii). The initial dividend on the Series C Senior Mandatory Convertible Preferred Stock for the dividend period commencing on April 9, 2003, to but excluding July 1, 2003, will be $0.71181 per share, and shall be payable, when, as and if declared, on July 1, 2003. The dividend on the Series C Senior Mandatory Convertible Preferred Stock for each subsequent dividend period shall be $0.78125 per share. The amount of dividends payable on each share of Series C Senior Mandatory Convertible Preferred Stock for each full quarterly period thereafter shall be computed by dividing the annual dividend rate by four. The amount of dividends payable for any other period that is shorter or longer than a full quarterly dividend period will be computed on the basis of a 360-day year consisting of twelve 30-day months.

A dividend period with respect to a Dividend Payment Date is the period commencing on the preceding Dividend Payment Date or, if none, the date of issue and ending on the day immediately prior to the next Dividend Payment Date. Dividends payable, when, as and if declared, on a Dividend Payment Date shall be payable to Holders (as defined below) of record as they appear on the stock books of the Company on the later of (i) the close of business on the 15th calendar day (or the following Business Day if such 15th calendar day is not a Business Day) of the calendar month preceding the month in which the applicable Dividend Payment Date falls and (ii) the close of business on the day on which the Board of Directors or a duly authorized committee thereof declares the dividend payable (each, a "Dividend Record Date").

Dividends on the Series C Senior Mandatory Convertible Preferred Stock shall be cumulative if the Company fails to declare one or more dividends on the Series C Senior Mandatory Convertible Preferred Stock in any amount, whether or not there are assets of the Company legally available for the payment of such dividends in whole or in part.

The Company may pay dividends, at its sole option, (a) in cash, (b) by delivering shares of Common Stock to the Transfer Agent (as defined below) on behalf of the Holders, to be sold on the Holders' behalf for cash or (c) any combination thereof. By and upon acquiring the Series C Senior Mandatory Convertible Preferred Stock, each Holder is deemed to appoint the Transfer Agent as such Holder's agent for any such sale, and the Transfer Agent shall serve as a designated agent of the Holders in making any such sales. To pay dividends in shares of Common Stock, the Company must deliver to the Transfer Agent a number of shares of Common Stock which, when sold by the Transfer Agent on the Holders' behalf, will result in net cash proceeds to be distributed to the Holders in an amount equal to the cash dividend otherwise payable to the Holders.

If the Company pays dividends in shares of Common Stock by delivering them to the Transfer Agent, those shares shall be owned beneficially by the Holders upon delivery to the Transfer Agent, and the Transfer Agent shall hold those shares and the net cash proceeds from the sale of those shares for the exclusive benefit of the Holders until the Dividend Payment Date, or such other date as is fixed by the Board of Directors or a duly authorized committee thereof pursuant to the terms and conditions set forth in the last paragraph of Section 2(i) hereof, at which time the portion of such net cash proceeds equal to the non-cash component of the declared dividend of the Series C Senior Mandatory Convertible Preferred Stock shall be distributed to the Holders entitled thereto with any remainder to continue to be held by the Transfer Agent for the exclusive benefit of the Holders and pooled with the net

2

cash proceeds from future sales of Common Stock delivered to the Transfer Agent pursuant to this paragraph.

Holders shall not be entitled to any dividend, whether payable in cash, property or stock, in excess of the then applicable full dividends calculated pursuant to Section 2(i) hereof (including accrued dividends, if any) on shares of Series C Senior Mandatory Convertible Preferred Stock. No interest or sum of money in lieu of interest shall be payable in respect of any dividend or payment which may be in arrears.

Dividends in arrears on the Series C Senior Mandatory Convertible Preferred Stock not declared for payment or paid on any Dividend Payment Date may be declared by the Board of Directors or a duly authorized committee thereof and paid on any date fixed by the Board of Directors or a duly authorized committee thereof, whether or not a Dividend Payment Date, to the Holders of record as they appear on the stock register of the Company on a record date selected by the Board of Directors or a duly authorized committee thereof, which shall (i) not precede the date the Board of Directors or an authorized committee thereof declares the dividend payable and (ii) not be more than 60 days prior to such fixed dividend payment date.

(ii) In order to pay dividends on any Dividend Payment Date, or such other date as is fixed by the Board of Directors or a duly authorized committee thereof pursuant to the terms and conditions set forth in the last paragraph of Section 2(i) hereof, in shares of Common Stock, (a) the shares of Common Stock delivered to the Transfer Agent shall have been duly authorized, (b) the Company shall have provided to the Transfer Agent an effective registration statement under the Securities Act of 1933, as amended, and the rules and regulations thereunder (the "Securities Act"), permitting the immediate sale of the shares of Common Stock in the public market, (c) the shares of Common Stock, once purchased by the purchasers thereof, shall be validly issued, fully paid and non-assessable and (d) such shares shall have been registered under the Securities Exchange Act of 1934, as amended, and the rules and regulations thereunder, if required, and shall be listed or admitted for trading on each United States securities exchange on which the Common Stock is then listed.

(iii) Payment Restrictions. The Company may not declare or pay any dividend or make any distribution of assets (other than dividends paid or other distributions made in Junior Securities) on, whether in cash, property or otherwise, or redeem, purchase or otherwise acquire (except upon conversion or exchange for Junior Securities), pay or make available any monies for a sinking fund for, Junior Securities, unless all accrued and unpaid dividends on the Series C Senior Mandatory Convertible Preferred Stock for all prior dividend periods have been or contemporaneously are declared and paid and the full quarterly dividend on the Series C Senior Mandatory Convertible Preferred Stock for the current dividend period has been or contemporaneously is declared and paid or declared and set apart for payment.

Unless all accrued and unpaid dividends on the Series C Senior Mandatory Convertible Preferred Stock for all prior dividend periods have been or contemporaneously are declared and paid and the full quarterly dividend on the Series C Senior Mandatory Convertible Preferred Stock for the current dividend period has been or contemporaneously is declared and paid or declared and set apart for payment, the Company may not redeem, purchase or otherwise acquire (except upon conversion or exchange for Parity Securities or Junior Securities, so long as (i) such Parity Securities contains terms and conditions (including, without limitation, with respect to the payment of dividends, dividend rates, liquidation preferences, voting and representation rights, payment restrictions, antidilution rights, change of control rights, covenants, remedies and conversion and redemption rights) that are not materially less favorable, taken as a whole, to the Company or to the Holders than those contained in the Parity Securities that is converted into or exchanged for such Parity Securities, (ii) the aggregate amount of the

liquidation preference of such Parity Securities does not exceed the aggregate amount of the liquidation preference, plus accrued and unpaid dividends, of the Parity Securities that is converted or exchanged for such Parity Securities and (iii) the aggregate number of shares of Common Stock issuable upon conversion, redemption or exchange of such Parity Securities does not exceed the aggregate number of shares of Common Stock issuable upon conversion, redemption or exchange of the Parity Securities that is converted or exchange for such Parity Securities) Parity Securities.

Section 3. Liquidation Preference. In the event of any voluntary or involuntary liquidation, dissolution or winding up of the Company, the Holders shall be entitled to receive out of the assets of the Company available for distribution to stockholders, before any distribution of assets is made on the Common Stock of the Company or any other class or series of stock of the Company ranking junior to the Series C Senior Mandatory Convertible Preferred Stock as to the distribution of assets upon the liquidation, dissolution or winding up of the Company, $50.00 per share, subject to adjustment as provided in Section 12(ii) hereof, plus an amount equal to the sum of all accrued and unpaid dividends (whether or not declared) for the then-current dividend period and all dividend periods prior thereto.

Neither the sale of all or substantially all of the property or business of the Company (other than in connection with the voluntary or involuntary liquidation, dissolution or winding up of the Company), nor the merger, conversion or consolidation of the Company into or with any other Person, nor the merger, conversion or consolidation of any other Person into or with the Company shall constitute a voluntary or involuntary liquidation, dissolution or winding up of the Company for the purposes of the foregoing paragraph. After the payment to the Holders of the full preferential amounts provided for above, the Holders as such shall have no right or claim to any of the remaining assets of the Company.

In the event the assets of the Company available for distribution to the Holders upon any voluntary or involuntary liquidation, dissolution or winding up of the Company shall be insufficient to pay in full all amounts to which such Holders are entitled as provided above, no such distribution shall be made on account of any other stock of the Company ranking pari passu with the Series C Senior Mandatory Convertible Preferred Stock as to the distribution of assets upon such liquidation, dissolution or winding up, unless a pro rata distribution is made on the Series C Senior Mandatory Convertible Preferred Stock and such other stock of the Company, with the amount allocable to each series of such stock determined on the basis of the aggregate liquidation preference of the outstanding shares of each series and distributions to the shares of each series being made on a pro rata basis.

Section 4. Voting Rights.

(i) The Holders shall have no voting rights, except as set forth below or as expressly required by applicable state law. In exercising any such vote, each outstanding share of Series C Senior Mandatory Convertible Preferred Stock shall be entitled to one vote.

(ii) So long as any Series C Senior Mandatory Convertible Preferred Stock is outstanding, in addition to any other vote of stockholders of the Company required under applicable law or the Restated Certificate of Incorporation, the affirmative vote or consent of the Holders of at least 66 2/3% of the outstanding shares of the Series C Senior Mandatory Convertible Preferred Stock will be required (a) for any amendment by merger, consolidation or otherwise, of the Restated Certificate of Incorporation if the amendment would alter or change the powers, preferences or rights of the shares of the Series C Senior Mandatory Convertible Preferred Stock so as to affect them adversely, (b) to issue, authorize or increase the authorized amount of, or issue or authorize any obligation or security convertible into or evidencing a right to purchase, by merger, consolidation or otherwise, any class or series of stock ranking senior to the Series C Senior Mandatory Convertible Preferred Stock as to dividend distributions or distributions upon the liquidation, dissolution or winding up of the Company, or (c) to reclassify by

4

merger, consolidation or otherwise, any authorized stock of the Company into any class or series of stock, or any obligation or security convertible into or evidencing a right to purchase any class or series of stock, ranking senior to the Series C Senior Mandatory Convertible Preferred Stock as to dividend distributions or distributions upon the liquidation, dissolution or winding up of the Company; provided that no such vote shall be required for the Company to issue, authorize or increase the authorized amount of, or issue or authorize any obligation or security convertible into or evidencing a right to purchase, any class or series of stock ranking pari passu with or junior to the Series C Senior Mandatory Convertible Preferred Stock as to dividend distributions or distributions upon the liquidation, dissolution or winding up of the Company.

Section 5. Automatic Conversion. Each share of Series C Senior Mandatory Convertible Preferred Stock will automatically convert (unless previously converted at the option of the Company in accordance with Section 6 or at the option of the Holder in accordance with Section 7, or a Merger Early Settlement has occurred in accordance with Section 8), on April 1, 2006 (the "Conversion Date"), into a number of newly issued shares of Common Stock equal to the Conversion Rate (as defined below). The Holders on the Conversion Date shall have the right to receive a dividend payment of cash, shares of Common Stock or any combination thereof, as the Company determines in its sole discretion, in an amount equal to any accrued and unpaid dividends on the Series C Senior Mandatory Convertible Preferred Stock as of the Conversion Date (other than previously declared dividends on the Series C Senior Mandatory Convertible Preferred Stock payable to a Holder of record as of a prior date), whether or not declared, out of legally available assets of the Company. To the extent the Company pays some or all of such dividend in shares of Common Stock, the number of shares of Common Stock issuable to a Holder in respect of such accrued and unpaid dividends shall equal the amount of accrued and unpaid dividends on the Series C Senior Mandatory Convertible Preferred Stock on the Conversion Date that the Company determines to pay in shares of Common Stock divided by the Current Market Price (as defined below).

Dividends on the shares of Series C Senior Mandatory Convertible Preferred Stock shall cease to accrue and such shares of Series C Senior Mandatory Convertible Preferred Stock shall cease to be outstanding on the Conversion Date. The Company shall make such arrangements as it deems appropriate for the issuance of certificates, if any, representing shares of Common Stock (both for purposes of the automatic conversion of shares of Series C Senior Mandatory Convertible Preferred Stock and for purposes of any dividend payment by the Company of shares of Common Stock in respect of accrued and unpaid dividends on the Series C Senior Mandatory Convertible Preferred Stock), and for any payment of cash in respect of accrued and unpaid dividends on the Series C Mandatory Convertible Preferred Stock or cash in lieu of fractional shares, if any, in exchange for and contingent upon the surrender of certificates representing the shares of Series C Senior Mandatory Convertible Preferred Stock (if such shares are held in certificated form), and the Company may defer the payment of dividends on such shares of Common Stock and the voting thereof until, and make such payment and voting contingent upon, the surrender of such certificates representing the shares of Series C Senior Mandatory Convertible Preferred Stock, provided that the Company shall give the Holders such notice of any such actions as the Company deems appropriate and upon such surrender such Holders shall be entitled to receive such dividends declared and paid on such shares of Common Stock subsequent to the Conversion Date. Amounts payable in cash in respect of the shares of Series C Senior Mandatory Convertible Preferred Stock or in respect of such shares of Common Stock shall not bear interest.

Section 6. Provisional Conversion at the Option of the Company.

(i) Prior to the Conversion Date, the Company may, at its option, cause the conversion of all, but not less than all, the shares of Series C Senior Mandatory Convertible Preferred Stock then outstanding for shares of Common Stock at a rate of 4.9358 shares of Common Stock for each share of

Series C Senior Mandatory Convertible Preferred Stock (the "Provisional Conversion Rate"), subject to adjustment as set forth in Section 9(ii) below (as though references in Section 9(ii) to the Conversion Rate were replaced with references to the Provisional Conversion Rate); provided that the Closing Price of the Common Stock has exceeded 150% of the Threshold Appreciation Price for at least 20 Trading Days (as defined below) within a period of 30 consecutive Trading Days ending on the Trading Day prior to the date on which the Company notifies the Holders (pursuant to paragraph (ii) below) that it is exercising its option to cause the conversion of the Series C Senior Mandatory Convertible Preferred Stock pursuant to this Section 6 (the "Provisional Conversion Notice Date"). The Company shall be able to cause this conversion only if, in addition to issuing the Holders shares of Common Stock, the Company pays the Holders in cash (a) an amount equal to any accrued and unpaid dividends on the shares of Series C Senior Mandatory Convertible Preferred Stock then outstanding, whether or not declared, and (b) the present value of all remaining dividend payments on the shares of Series C Senior Mandatory Convertible Preferred Stock then outstanding, through and including April 1, 2006, in each case, out of legally available assets of the Company. The present value of the remaining dividend payments will be computed using a discount rate equal to the Treasury Yield.

(ii) A written notice (the "Provisional Conversion Notice") shall be sent by or on behalf of the Company, by first class mail, postage prepaid, to the Holders of record as they appear on the stock register of the Company on the Provisional Conversion Notice Date (a) notifying such Holders of the election of the Company to convert and of the Provisional Conversion Date (as defined below), which date shall not be less than 30 days nor be more than 60 days after the Provisional Conversion Notice Date, and (b) stating the Corporate Trust Office of the Transfer Agent at which the shares of Series C Senior Mandatory Convertible Preferred Stock called for conversion shall, upon presentation and surrender of the certificate(s) (if such shares are held in certificated form) evidencing such shares, be converted, and the Provisional Conversion Rate to be applied therefor.

(iii) The Company shall deliver to the Transfer Agent irrevocable written instructions authorizing the Transfer Agent, on behalf and at the expense of the Company, to cause the Provisional Conversion Notice to be duly mailed as soon as practicable after receipt of such irrevocable instructions from the Company and in accordance with the above provisions. The shares of Common Stock to be issued upon conversion of the Series C Senior Mandatory Convertible Preferred Stock pursuant to this Section 6 and all funds necessary for the payment in cash of (a) any accrued and unpaid dividends on the shares of Series C Senior Mandatory Convertible Preferred Stock then outstanding, whether or not declared, and (b) the present value of all remaining dividend payments on the shares of Series C senior mandatory convertible preferred stock then outstanding through and including April 1, 2006, shall be deposited with the Transfer Agent in trust at least one Business Day prior to the Provisional Conversion Date, for the pro rata benefit of the Holders of record as they appear on the stock register of the Company, so as to be and continue to be available therefor. Neither failure to mail such Provisional Conversion Notice to one or more such Holders nor any defect in such Provisional Conversion Notice shall affect the sufficiency of the proceedings for conversion as to other Holders.

(iv) If a Provisional Conversion Notice shall have been given as hereinbefore provided, then each Holder shall be entitled to all preferences and relative, participating, optional and other special rights accorded by this certificate until and including the Provisional Conversion Date. From and after the Provisional Conversion Date, upon delivery by the Company of the Common Stock and payment of the funds to the Transfer Agent as described in paragraph (iii) above, the Series C Senior Mandatory Convertible Preferred Stock shall no longer be deemed to be outstanding, and all rights of such Holders shall cease and terminate, except the right of the Holders, upon surrender of certificates therefor, to receive Common Stock and any amounts to be paid hereunder.

(v) The deposit of monies in trust with the Transfer Agent shall be irrevocable except that the Company shall be entitled to receive from the Transfer Agent the interest or other earnings, if any, earned on any monies so deposited in trust, and the Holders of the shares converted shall have no claim to such interest or other earnings, and any balance of monies so deposited by the Company and unclaimed by the Holders entitled thereto at the expiration of two years from the Provisional Conversion Date shall be repaid, together with any interest or other earnings thereon, to the Company, and after any such repayment, the Holders of the shares entitled to the funds so repaid to the Company, shall look only to the Company for such payment without interest.

## Section 7. Early Conversion at the Option of the Holder.

(i) Shares of Series C Senior Mandatory Convertible Preferred Stock are convertible, in whole or in part, at the option of the Holders thereof ("Optional Conversion"), at any time prior to the Conversion Date, into shares of Common Stock at a rate of 4.9358 shares of Common Stock for each share of Series C Senior Mandatory Convertible Preferred Stock (the "Optional Conversion Rate"), subject to adjustment as set forth in Section 9(ii) below (as though references in Section 9(ii) to the Conversion Rate were replaced with references to the Optional Conversion Rate).

(ii) Optional Conversion of shares of Series C Senior Mandatory Convertible Preferred Stock may be effected by delivering certificates evidencing such shares (if such shares are held in certificated form), together with written notice of conversion and a proper assignment of such certificates to the Company or in blank (and, if applicable, payment of an amount equal to the dividend payable on such shares pursuant to paragraph (iii) below), to the Corporate Trust Office of the Transfer Agent for the Series C Senior Mandatory Convertible Preferred Stock or to any other office or agency maintained by the Company for that purpose. Each Optional Conversion shall be deemed to have been effected immediately prior to the close of business on the date on which the foregoing requirements shall have been satisfied.

(iii) Holders of shares of Series C Senior Mandatory Convertible Preferred Stock at the close of business on a Dividend Record Date shall be entitled to receive the dividend payable on such shares on the corresponding Dividend Payment Date (if such dividend has been declared) notwithstanding the Optional Conversion of such shares following such Dividend Record Rate and prior to such Dividend Payment Date. However, shares of Series C Senior Mandatory Convertible Preferred Stock surrendered for Optional Conversion after the close of business on a Dividend Record Date and before the opening of business on the corresponding Dividend Payment Date must be accompanied by payment in cash of an amount equal to the dividend payable on such shares on such Dividend Payment Date. Except as provided above, upon any Optional Conversion of shares of Series C Senior Mandatory Convertible Preferred Stock, the Company shall make no payment or allowance for unpaid preferred dividends, whether or not in arrears, on such shares of Series C Senior Mandatory Convertible Preferred Stock as to which Optional Conversion has been effected or for dividends or distributions on the shares of Common Stock issued upon such Optional Conversion.

## Section 8. Early Conversion Upon Cash Merger.

(i) In the event of a merger or consolidation of the Company of the type described in Section 9(iii)(a) in which the Common Stock outstanding immediately prior to such merger or consolidation is exchanged for consideration consisting of at least 30% cash or cash equivalents (any such event a "Cash Merger"), then the Company (or the successor to the Company hereunder) shall be required to offer all Holders of shares of Series C Senior Mandatory Convertible Preferred Stock that remain outstanding after the Cash Merger (if any) the right to convert their shares of Series C Senior Mandatory Convertible Preferred Stock prior to the Conversion Date ("Merger Early Settlement") as provided herein.

7

On or before the fifth Business Day after the consummation of a Cash Merger, the Company or, at the request and expense of the Company, the Transfer Agent, shall give all Holders notice of the occurrence of the Cash Merger and of the right of Merger Early Settlement arising as a result thereof. The Company shall also deliver a copy of such notice to the Transfer Agent. Each such notice shall contain:

> (a) the date, which shall be not less than 20 nor more than 30 calendar days after the date of such notice, on which the Merger Early Settlement will be effected (the "Merger Early Settlement Date");

> (b) the date, which shall be on or one Business Day prior to the Merger Early Settlement Date, by which the Merger Early Settlement right must be exercised;

> (c) the Conversion Rate in effect immediately before such Cash Merger and the kind and amount of securities, cash and other property receivable by the Holder upon conversion of its shares of Series C Senior Mandatory Convertible Preferred Stock pursuant to Section 9(iii); and

> (d) the instructions a Holder must follow to exercise the Merger Early Settlement right.

(ii) To exercise a Merger Early Settlement right, a Holder shall deliver to the Transfer Agent at the Corporate Trust Office (as defined below) by 5:00 p.m., New York City time on or before the date by which the Merger Settlement right must be exercised as specified in the notice, the certificate(s) (if such shares are held in certificated form) evidencing the shares of Series C Senior Mandatory Convertible Preferred Stock with respect to which the Merger Early Settlement right is being exercised duly endorsed for transfer to the Company or in blank with a written notice to the Company stating the Holder's intention to convert early in connection with the Cash Merger and providing the Company with payment instructions.

(iii) On the Merger Early Settlement Date, the Company shall deliver or cause to be delivered the cash, securities and other property to be received by such exercising Holder determined by assuming the Holder had converted the shares of Series C Senior Mandatory Convertible Preferred Stock for which such Merger Early Settlement right was exercised into Common Stock immediately before the Cash Merger at the Conversion Rate (as adjusted pursuant to Section 9(ii)).

(iv) Upon a Merger Early Settlement, the Transfer Agent shall, in accordance with the instructions provided by the Holder thereof on the notice provided to the Company as set forth in paragraph (ii) above, deliver to the Holder such cash, securities or other property issuable upon such Merger Early Settlement together with payment in lieu of any fractional shares, as provided herein.

(v) In the event that Merger Early Settlement is effected with respect to shares of Series C Senior Mandatory Convertible Preferred Stock representing less than all the shares of Series C Senior Mandatory Convertible Preferred Stock held by a Holder, upon such Merger Early Settlement the Company (or the successor to the Company hereunder) shall execute and the Transfer Agent shall authenticate, countersign and deliver to the Holder thereof, at the expense of the Company, a certificate evidencing the shares as to which Merger Early Settlement was not effected.

Section 9. Definition of Conversion Rate; Anti-dilution Adjustments.

8

(i) Subject to the immediately following sentence, the "Conversion Rate" is equal to, (a) if the Applicable Market Value (as defined below) is greater than or equal to $10.13 (the "Threshold Appreciation Price"), 4.9358 shares of Common Stock per share of Series C Senior Mandatory Convertible Preferred Stock, (b) if the Applicable Market Value is less than the Threshold Appreciation Price, but greater than $8.30, the number of shares of Common Stock per share of Series C Senior Mandatory Convertible Preferred Stock equal to $50.00 (the "Stated Amount") divided by the Applicable Market Value, and (c) if the Applicable Market Value is equal to or less than $8.30, 6.0241 shares of Common Stock per share of Series C Senior Mandatory Convertible Preferred Stock, in each case subject to adjustment as provided in Section 9(ii) (and in each case rounded upward or downward to the nearest 1/10,000th of a share). In each of the clauses in the immediately preceding sentence, the number of newly-issued shares of Common Stock issuable upon conversion of each share of the Series C Senior Mandatory Convertible Preferred Stock on the Conversion Date in respect of a conversion pursuant to Section 5 shall be increased by an amount equal to any accrued and unpaid dividends on the Series C Senior Mandatory Convertible Preferred Stock on the Conversion Date (taking into account any payment of such dividends on the Conversion Date) divided by the Current Market Price.

(ii) In connection with the Conversion Rate as set forth in Section 9(i), the formula for determining the Conversion Rate and the number of shares of Common Stock to be delivered on the Conversion Date on an early conversion as set forth in Sections 6, 7 or 8 shall be subject to the following adjustments:

(a) Stock Dividends. In case the Company shall pay or make a dividend or other distribution on the Common Stock in Common Stock, the Conversion Rate, as in effect at the opening of business on the day following the date fixed for the determination of stockholders entitled to receive such dividend or other distribution shall be increased by dividing such Conversion Rate by a fraction of which the numerator shall be the number of shares of Common Stock outstanding at the close of business on the date fixed for such determination and the denominator shall be the sum of such number of shares and the total number of shares constituting such dividend or other distribution, such increase to become effective immediately after the opening of business on the day following the date fixed for such determination.

(b) Stock Purchase Rights. In case the Company shall issue to all holders of its Common Stock (such issuance not being available on an equivalent basis to Holders of the shares of Series C Senior Mandatory Convertible Preferred Stock upon conversion) (1) rights, options or warrants entitling them to subscribe for or purchase shares of Common Stock, or (2) securities convertible or exchangeable into shares of Common Stock or rights, options or warrants to purchase or acquire securities convertible or exchangeable into shares of Common Stock, in each case at a price per share of Common Stock less than the Current Market Price on the date fixed for the determination of stockholders entitled to receive such rights, options, warrants or securities (other than pursuant to a dividend reinvestment, share purchase or similar plan), the Conversion Rate in effect at the opening of business on the day following the date fixed for such determination shall be increased by dividing such Conversion Rate by a fraction, the numerator of which shall be the number of shares of Common Stock outstanding at the close of business on the date fixed for such determination plus the

9

number of shares of Common Stock which the aggregate consideration expected to be received by the Company upon the exercise, conversion or exchange of such rights, options, warrants or securities (as determined in good faith by the Board of Directors, whose determination shall be conclusive and described in a Board Resolution) would purchase at such Current Market Price and the denominator of which shall be the number of shares of Common Stock outstanding at the close of business on the date fixed for such determination plus the number of shares of Common Stock so offered for subscription or purchase, either directly and indirectly, or into which such securities are convertible or exchangeable, such increase to become effective immediately after the opening of business on the day following the date fixed for such determination.

(c) Stock Splits; Reverse Splits; and Combinations. In case outstanding shares of Common Stock shall be subdivided, split or reclassified into a greater number of shares of Common Stock, the Conversion Rate in effect at the opening of business on the day following the day upon which such subdivision, split or reclassification becomes effective shall be proportionately increased, and, conversely, in case outstanding shares of Common Stock shall each be combined or reclassified into a smaller number of shares of Common Stock, the Conversion Rate in effect at the opening of business on the day following the day upon which such combination or reclassification becomes effective shall be proportionately reduced, such increase or reduction, as the case may be, to become effective immediately after the opening of business on the day following the day upon which such subdivision, split, reclassification or combination becomes effective.

(d) Debt, Asset or Security Distributions. (1) In case the Company shall, by dividend or otherwise, distribute to all holders of its Common Stock evidences of its indebtedness, assets or securities (but excluding any rights, options, warrants or securities referred to in paragraph (b) of this Section 9(ii), any dividend or distribution paid exclusively in cash and any dividend, shares of capital stock of any class or series, or similar equity interests, of or relating to a subsidiary or other business unit in the case of a Spin-Off referred to in the next subparagraph, or dividend or distribution referred to in paragraph (a) of this Section 9(ii)), the Conversion Rate shall be increased by dividing the Conversion Rate in effect immediately prior to the close of business on the date fixed for the determination of stockholders entitled to receive such distribution by a fraction, the numerator of which shall be the Current Market Price on the date fixed for such determination less the then fair market value (as determined in good faith by the Board of Directors, whose determination shall be conclusive and described in a Board Resolution) of the portion of the assets or evidences of indebtedness so distributed applicable to one share of Common Stock and the denominator of which shall be such Current Market Price, such adjustment to become effective immediately prior to the opening of business on the day following the date fixed for the determination of stockholders entitled to receive such distribution. In any case in which

10

this subparagraph (d)(1) is applicable, subparagraph (d)(2) of this Section 9(ii) shall not be applicable.

(2) In the case of a Spin-Off, the Conversion Rate in effect immediately before the close of business on the record date fixed for determination of stockholders entitled to receive that distribution will be increased by multiplying the Conversion Rate by a fraction, the numerator of which is the Current Market Price plus the Fair Market Value (as defined below) of the portion of those shares of Capital Stock or similar equity interests so distributed applicable to one share of Common Stock and the denominator of which is the Current Market Price. Any adjustment to the Conversion Rate under this subparagraph (d)(2) will occur at the earlier of (A) the tenth Trading Day from, and including, the effective date of the Spin-Off and (B) the date of the securities being offered in the Initial Public Offering of the Spin-Off, if that Initial Public Offering is effected simultaneously with the Spin-Off.

(c) Cash Distributions. In case the Company shall, (1) by dividend or otherwise, distribute to all holders of its Common Stock cash (excluding any cash that is distributed in a Reorganization Event to which Section 9(iii) applies or as part of a distribution referred to in paragraph (d) of this Section 9(ii)) in an aggregate amount that, combined together with (2) the aggregate amount of any other distributions to all holders of its Common Stock made exclusively in cash within the 12 months preceding the date of payment of such distribution and in respect of which no adjustment pursuant to this paragraph (e) or paragraph (f) of this Section 9(ii) has been made and (3) the aggregate of any cash plus the fair market value, as of the date of the expiration of the tender or exchange offer referred to below (as determined in good faith by the Board of Directors, whose determination shall be conclusive and described in a Board Resolution), of the consideration payable in respect of any tender or exchange offer by the Company or any of its subsidiaries for all or any portion of the Common Stock concluded within the 12 months preceding the date of payment of the distribution described in clause (1) of this paragraph (e) and in respect of which no adjustment pursuant to this paragraph (e) or paragraph (f) of this Section 9(ii) has been made, exceeds 10% of the product of the Current Market Price on the date for the determination of stockholders entitled to receive such distribution times the number of shares of Common Stock outstanding on such date, then, and in each such case, immediately after the close of business on such date for determination, the Conversion Rate shall be increased by dividing the Conversion Rate in effect immediately prior to the close of business on the date fixed for determination of the stockholders entitled to receive such distribution by a fraction (A) the numerator of which shall be equal to the Current Market Price on the date fixed for such determination less an amount equal to the quotient of (x) the combined amount distributed or payable in the transactions described in clauses (1), (2) and (3) of this paragraph (e) and (y) the number of shares of Common Stock outstanding on the date fixed for such determination and (B) the

11

denominator of which shall be equal to the Current Market Price on the date fixed for such determination.

(f) Tender Offers. In case (1) a tender or exchange offer made by the Company or any subsidiary of the Company for all or any portion of the Common Stock shall expire and such tender or exchange offer (as amended through the expiration thereof) shall require the payment to stockholders (based on the acceptance (up to any maximum specified in the terms of the tender or exchange offer) of Purchased Shares (as defined below)) of an aggregate consideration having a fair market value (as determined in good faith by the Board of Directors, whose determination shall be conclusive and described in a Board Resolution) that combined together with (2) the aggregate of the cash plus the fair market value (as determined in good faith by the Board of Directors, whose determination shall be conclusive and described in a Board Resolution), as of the expiration of such tender or exchange offer, of consideration payable in respect of any other tender or exchange offer by the Company or any subsidiary of the Company for all or any portion of the Common Stock expiring within the 12 months preceding the expiration of such tender or exchange offer and in respect of which no adjustment pursuant to paragraph (e) of this Section 9(ii) or this paragraph (f) has been made and (3) the aggregate amount of any distributions to all holders of shares of the Common Stock made exclusively in cash within the 12 months preceding the expiration of such tender or exchange offer and in respect of which no adjustment pursuant to paragraph (e) of this Section 9(ii) or this paragraph (f) has been made, exceeds 10% of the product of the Current Market Price as of the last time (the "Expiration Time") tenders could have been made pursuant to such tender or exchange offer (as amended through the expiration thereof) times the number of shares of Common Stock outstanding (including any tendered shares) at the Expiration Time, then, and in each such case, immediately prior to the opening of business on the day after the date of the Expiration Time, the Conversion Rate shall be increased by dividing the Conversion Rate immediately prior to the close of business on the date of the Expiration Time by a fraction (A) the numerator of which shall be equal to (x) the product of (I) the Current Market Price on the date of the Expiration Time and (II) the number of shares of Common Stock outstanding (including any tendered shares) on the date of the Expiration Time less (y) the amount of cash plus the fair market value (determined as aforesaid) of the aggregate consideration payable to stockholders based on the transactions described in clauses (1), (2) and (3) of this paragraph (f) (assuming in the case of clause (1) the acceptance, up to any maximum specified in the terms of the tender or exchange offer, of Purchased Shares), and (B) the denominator of which shall be equal to the product of (x) the Current Market Price on the date of the Expiration Time and (y) the number of shares of Common Stock outstanding (including any tendered shares) on the date of the Expiration Time less the number of all shares validly tendered, not withdrawn and accepted for payment on the date of the Expiration Time (such validly tendered shares, up to any such maximum, being referred to as the "Purchased Shares").

(g) Calculation of Adjustments. All adjustments to the Conversion Rate shall be calculated to the nearest 1/10,000th of a share of Common Stock (or if there is not a nearest 1/10,000th of a share to the next lower 1/10,000th of a share). No adjustment in the Conversion Rate shall be required unless such adjustment would require an increase or decrease of at least one percent therein; provided, that any adjustments which by reason of this subparagraph are not required to be made shall be carried forward and taken into account in any subsequent adjustment. If an adjustment is made to the Conversion Rate pursuant to paragraph (a), (b), (c), (d), (e), (f) or (h) of this Section 9(ii), an adjustment shall also be made to the Applicable Market Value solely to determine which of clauses (a), (b) or (c) of the definition of Conversion Rate will apply on the Conversion Date. Such adjustment shall be made by multiplying the Applicable Market Value by a fraction, the numerator of which shall be the Conversion Rate immediately before such adjustment and the denominator of which shall be the Conversion Rate immediately after such adjustment pursuant to paragraph (a), (b), (c), (d), (e), (f) or (h) of this Section 9(ii); provided, that if such adjustment to the Conversion Rate is required to be made pursuant to the occurrence of any of the events contemplated by paragraph (a), (b), (c), (d), (e), (f) or (h) of this Section 9(ii) during the period taken into consideration for determining the Applicable Market Value, appropriate and customary adjustments shall be made to the Conversion Rate.

(h) Increase of Conversion Rate. The Company may make such increases in the Conversion Rate, in addition to those required by this Section 9(ii), as it considers to be advisable in order to avoid or diminish any income tax to any holders of shares of Common Stock resulting from any dividend or distribution of stock or issuance of rights or warrants to purchase or subscribe for stock or from any event treated as such for income tax purposes or for any other reasons.

(i) Notice of Adjustment. Whenever the Conversion Rate is adjusted in accordance with this Section 9(ii), the Company shall: (1) forthwith compute the Conversion Rate in accordance with this Section 9(ii) and prepare and transmit to the Transfer Agent an Officer's Certificate setting forth the Conversion Rate, the method of calculation thereof in reasonable detail, and the facts requiring such adjustment and upon which such adjustment is based; and (2) as soon as practicable following the occurrence of an event that requires an adjustment to the Conversion Rate pursuant to this Section 9(ii) (or if the Company is not aware of such occurrence, as soon as practicable after becoming so aware), provide a written notice to the Holders of the occurrence of such event and a statement setting forth in reasonable detail the method by which the adjustment to the Conversion Rate was determined and setting forth the adjusted Conversion Rate.

(iii) In the event of:

(a) any consolidation or merger of the Company with or into another Person or of another Person with or into the Company; or

13

(b) any sale, transfer, lease or conveyance to another Person of the property of the Company as an entirety or substantially as an entirety; or

(c) any reclassification (other than a reclassification to which paragraph (c) of Section 9(ii) applies),

(any such event, a "Reorganization Event"), each share of Series C Senior Mandatory Convertible Preferred Stock prior to such Reorganization Event shall, after such Reorganization Event, be converted into the right to receive the kind and amount of securities, cash and other property receivable in such Reorganization Event (without any interest thereon, and without any right to dividends or distribution thereon which have a record date that is prior to the date of the Reorganization Event) per share of Series C Mandatory Convertible Preferred Stock by a holder of Common Stock that (1) is not a Person with which the Company consolidated or into which the Company merged or which merged into the Company or to which such sale or transfer was made, as the case may be (any such Person, a "Constituent Person"), or an Affiliate (as defined below) of a Constituent Person to the extent such Reorganization Event provides for different treatment of Common Stock held by Affiliates of the Company and non-Affiliates, and (2) has failed to exercise the rights of election, if any, as to the kind or amount of securities, cash and other property receivable upon such Reorganization Event (provided that if the kind or amount of securities, cash and other property receivable upon such Reorganization Event is not the same for each share of Common Stock held immediately prior to such Reorganization Event by other than a Constituent Person or an Affiliate thereof and in respect of which such rights of election shall not have been exercised ("Non-electing Share"), then for the purpose of this Section 9(iii) the kind and amount of securities, cash and other property receivable upon such Reorganization Event by each Non-electing Share shall be deemed to be the kind and amount so receivable per share by a plurality of the Non-electing Shares). On the Conversion Date, the Conversion Rate then in effect shall be applied to the value or amount on the Conversion Date of such securities, cash or other property.

In the event of such a Reorganization Event, the Person formed by such consolidation, or merger or the Person which acquires the assets of the Company shall execute and deliver to the Transfer Agent an agreement supplemental hereto providing that the Holder of each share of Series C Senior Mandatory Convertible Preferred Stock that remains outstanding after the Reorganization Event (if any) shall have the rights provided by this Section 9(iii). Such supplemental agreement shall provide for adjustments which, for events subsequent to the effective date of such supplemental agreement, shall be as nearly equivalent as may be practicable to the adjustments provided for in this Section 9. The above provisions of this Section 9(iii) shall similarly apply to successive Reorganization Events.

Section 10. Definitions.

(i) "Affiliate" has the same meaning as given to that term in Rule 405 of the Securities Act or any successor rule thereunder.

(ii) The "Applicable Market Value" means the average of the Closing Price per share of Common Stock on each of the 20 consecutive Trading Days ending on the third Trading Day immediately preceding the Conversion Date.

(iii) "Board Resolution" means a copy of a resolution certified by the Secretary or any Assistant Secretary of the Company, to have been duly adopted by the Board of Directors and to be in full force and effect and filed with the Transfer Agent.

(iv) "Business Day" means any day other than a Saturday or Sunday or any other day on which banks in The City of New York are authorized or required by law or executive order to close.

14

(v) "Capital Stock" of any Person means any and all shares, interests, participations or other equivalents however designated of corporate stock or other equity participations, including partnership interests, whether general or limited, of such Person and any rights (other than debt securities convertible or exchangeable into an equity interest), warrants or options to acquire an equity interest in such Person.

(vi) The "Closing Price" of the Common Stock or any securities distributed in a Spin-Off, as the case may be, on any date of determination means the closing sale price (or, if no closing sale price is reported, the last reported sale price) per share on the New York Stock Exchange ("NYSE") on such date or, if such security is not listed for trading on NYSE on any such date, as reported in the composite transactions for the principal United States securities exchange on which such security is so listed or quoted, or if such security is not so listed or quoted on a United States national or regional securities exchange, as reported by the Nasdaq stock market, or, if such security is not so reported, the last quoted bid price for the such security in the over-the-counter market as reported by the National Quotation Bureau or similar organization, or, if such bid price is not available, the market value of such security on such date as determined by a nationally recognized independent investment banking firm retained for this purpose by the Company.

(vii) "Corporate Trust Office" means the principal corporate trust office of the Transfer Agent at which, at any particular time, its corporate trust business shall be administered.

(viii) "Current Market Price" means (a) on any day the average of the Closing Prices of the Common Stock for the five consecutive Trading Days preceding the earlier of the day preceding the day in question and the day before the "ex date" with respect to the issuance or distribution requiring computation, (b) in the case of any Spin-Off that is effected simultaneously with an Initial Public Offering of the securities being distributed in the Spin-Off, the Closing Price of the Common Stock on the Trading Day on which the initial public offering price of the securities being distributed in the Spin-Off is determined, and (c) in the case of any other Spin-Off, the average of the Closing Prices of the Common Stock over the first 10 Trading Days after the effective date of such Spin-Off. For purposes of this paragraph, the term "ex date," when used with respect to any issuance or distribution, shall mean the first date on which the Common Stock trades in a regular way on such exchange or in such market without the right to receive such issuance or distribution.

(ix) "Fair Market Value" means (a) in the case of any Spin-Off that is effected simultaneously with an Initial Public Offering of the securities being distributed in the Spin-Off, the initial public offering price of those securities, and (b) in the case of any other Spin-Off, the average of the Closing Prices of the securities being distributed in the Spin-Off over the first 10 Trading Days after the effective date of such Spin-Off.

(x) "Holder" means the Person in whose name a share of Series C Senior Mandatory Convertible Preferred Stock is registered.

(xi) "Initial Public Offering" means the first time securities of the same class or type as the securities being distributed in the Spin-Off are offered to the public for cash.

(xii) "Officer" means the Chairman of the Board, the Chief Executive Officer, the Chief Financial Officer, the President, any Vice President, the Treasurer or the Secretary of the Company.

(xiii) "Officer's Certificate" means a certificate signed by two Officers.

15

(xiv) "Person" means any individual, corporation, limited liability company, partnership, joint venture, trust, unincorporated organization or government or any agency or political subdivision thereof.

(xv) "Provisional Conversion Date" means the date fixed for conversion of shares of Series C Senior Mandatory Convertible Preferred Stock for shares of Common Stock pursuant to Section 6 above or, if the Company shall default in the cash payment of (a) an amount equal to any accrued and unpaid dividends on the shares of Series C Senior Mandatory Convertible Preferred Stock then outstanding , whether or not declared, and (b) the present value of all remaining dividend payments on the shares of Series C Senior Mandatory Convertible Preferred Stock then outstanding, through and including April 1, 2006, in connection with such conversion on such date, the date the Company actually makes such payment.

(xvi) "Spin-Off" means a dividend or other distribution of shares of capital stock of any class or series, or similar equity interests, of or relating to a subsidiary or other business unit of the Company.

(xvii) "Subsidiary" means, with respect to any Person, (a) any corporation, association or other business entity of which more than 50% of the total voting power of shares of Capital Stock entitled (without regard to the occurrence of any contingency) to vote in the election of directors, managers or trustees thereof is at the time owned or controlled, directly or indirectly, by such Person or one or more of the other Subsidiaries of that Person (or a combination thereof) and (b) any partnership (1) the sole general partner or the managing general partner of which is such Person or a Subsidiary of such Person or (2) the only general partners of which are such Person or of one or more Subsidiaries of such Person (or any combination thereof).

(xviii) "Trading Day" means a day on which the Common Stock or any security distributed in a Spin-Off, as the case may be, (A) is not suspended from trading on any national or regional securities exchange or association or over-the-counter market at the close of business and (B) has traded at least once on the national or regional securities exchange or association or over-the-counter market that is the primary market for the trading of such security.

(xix) "Treasury Yield" means the yield to maturity at the time of computation of United States Treasury securities with a constant maturity (as compiled and published in the most recent Federal Reserve Statistical Release H.15 (519) which has become publicly available at least two Business Days prior to the Provisional Conversion Date (or, if such Statistical Release is no longer published, any publicly available source for similar market data)) most nearly equal to the then remaining term to April 1, 2006, provided, however, that if the then remaining term to April 1, 2006 is not equal to the constant maturity of a United States Treasury security for which a weekly average yield is given, the Treasury Rate shall be obtained by linear interpolation (calculated to the nearest one-twelfth of a year) from the weekly average yields of United States Treasury securities for which such yields are given, except that if the then remaining term to April 1, 2006 is less than one year, the weekly average yield on actually traded United States Treasury securities adjusted to a constant maturity of one year shall be used.

(xx) "Transfer Agent" means the American Stock Transfer & Trust Company unless and until a successor is selected by the Company, and then such successor.

Section 11. Fractional Shares.

No fractional shares of Common Stock shall be issued to Holders. In lieu of any fraction of a share of Common Stock which would otherwise be issuable in respect of the aggregate number of

16

shares of the Series C Senior Mandatory Convertible Preferred Stock surrendered by the same Holder upon a conversion as described in Sections 5, 6(i), 7(i) or 8(i) or which would otherwise be issuable in respect of a stock dividend payment upon a conversion as described in Section 5, such Holder shall have the right to receive an amount in cash (computed to the nearest cent) equal to the same fraction of (a) in the case of Section 5, the Current Market Price or (b) in the case of Sections 6(i), 7(i) or 8(i), the Closing Price of the Common Stock determined as of the second Trading Day immediately preceding the effective date of conversion. If more than one share of Series C Senior Mandatory Convertible Preferred Stock shall be surrendered for conversion at one time by or for the same Holder, the number of full shares of Common Stock issuable upon conversion thereof shall be computed on the basis of the aggregate number of shares of the Series C Senior Mandatory Convertible Preferred Stock so surrendered.

Section 12. Miscellaneous.

(i) Procedures for conversion of shares of Series C Senior Mandatory Convertible Preferred Stock, in accordance with Sections 5, 6, 7 or 8, not held in certificated form will be governed by arrangements among the depository of the shares of Series C Senior Mandatory Convertible Preferred Stock, its participants and persons that may hold beneficial interests through such participants designed to permit settlement without the physical movement of certificates. Payments, transfers, deliveries, exchanges and other matters relating to beneficial interests in global security certificates may be subject to various policies and procedures adopted by the depositary from time to time.

(ii) The Liquidation Preference and the annual dividend rate set forth herein each shall be subject to equitable adjustment whenever there shall occur a stock split, combination, reclassification or other similar event involving the Series C Senior Mandatory Convertible Preferred Stock. Such adjustments shall be determined in good faith by the Board of Directors and submitted by the Board of Directors to the Transfer Agent.

(iii) For the purposes of Section 9, the number of shares of Common Stock at any time outstanding shall not include shares held in the treasury of the Company but shall include shares issuable in respect of scrip certificates issued in lieu of fractions of shares of Common Stock.

(iv) If the Company shall take any action affecting the Common Stock, other than any action described in Section 9, that in the opinion of the Board of Directors would materially adversely affect the conversion rights of the Holders, then the Conversion Rate, the Provisional Conversion Rate and/or the Optional Conversion Rate for the Series C Senior Mandatory Convertible Preferred Stock may be adjusted, to the extent permitted by law, in such manner, and at such time, as the Board of Directors may determine to be equitable in the circumstances.

(v) The Company covenants that it will at all times reserve and keep available, free from preemptive rights, out of the aggregate of its authorized but unissued shares of Common Stock for the purpose of effecting conversion of the Series C Senior Mandatory Convertible Preferred Stock, the full number of shares of Common Stock deliverable upon the conversion of all outstanding shares of Series C Senior Mandatory Convertible Preferred Stock not theretofore converted. For purposes of this Section 12(v), the number of shares of Common Stock that shall be deliverable upon the conversion of all outstanding shares of Series C Senior Mandatory Convertible Preferred Stock shall be computed as if at the time of computation all such outstanding shares were held by a single Holder.

(vi) The Company covenants that any shares of Common Stock issued upon conversion of the Series C Senior Mandatory Convertible Preferred Stock or issued in respect of a stock dividend payment upon a conversion described in Section 5, shall be validly issued, fully paid and non-assessable.

17

(vii) The Company shall use its best efforts to list the shares of Common Stock required to be delivered upon conversion of the Series C Senior Mandatory Convertible Preferred Stock or upon issuance in respect of a stock dividend payment upon a conversion described in Section 5, prior to such delivery, upon each national securities exchange or quotation system, if any, upon which the outstanding Common Stock is listed at the time of such delivery.

(viii) Prior to the delivery of any securities that the Company shall be obligated to deliver upon conversion of the Series C Senior Mandatory Convertible Preferred Stock or upon issuance in respect of a stock dividend payment upon a conversion described in Section 5, the Company shall use its best efforts to comply with all federal and state laws and regulations thereunder requiring the registration of such securities with, or any approval of or consent to the delivery thereof by, any governmental authority.

(ix) The Company shall pay any and all documentary stamp or similar issue or transfer taxes payable in respect of the issue or delivery of shares of Common Stock or other securities or property upon conversion of the Series C Senior Mandatory Convertible Preferred Stock pursuant thereto or upon issuance in respect of a stock dividend payment upon a conversion described in Section 5; provided, however, that the Company shall not be required to pay any tax that may be payable in respect of any transfer involved in the issue or delivery of shares of Common Stock or other securities or property in a name other than that of the Holder of the Series C Senior Mandatory Convertible Preferred Stock to be converted and no such issue or delivery shall be made unless and until the person requesting such issue or delivery has paid to the Company the amount of any such tax or established, to the reasonable satisfaction of the Company, that such tax has been paid or is not applicable.

(x) The Series C Senior Mandatory Convertible Preferred Stock is not redeemable.

(xi) The Series C Senior Mandatory Convertible Preferred Stock is not entitled to any preemptive or subscription rights in respect of any securities of the Company.

(xii) Whenever possible, each provision hereof shall be interpreted in a manner as to be effective and valid under applicable law, but if any provision hereof is held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating or otherwise adversely affecting the remaining provisions hereof. If a court of competent jurisdiction should determine that a provision hereof would be valid or enforceable if a period of time were extended or shortened or a particular percentage were increased or decreased, then such court may make such change as shall be necessary to render the provision in question effective and valid under applicable law.

(xiii) Series C Senior Mandatory Convertible Preferred Stock may be issued in fractions of a share which shall entitle the Holder, in proportion to such Holder's fractional shares, to exercise voting rights, receive dividends, participate in distributions and have the benefit of all other rights of Holders of Series C Senior Mandatory Convertible Preferred Stock.

(xiv) Subject to applicable escheat laws, any monies set aside by the Company in respect of any payment with respect to shares of the Series C Senior Mandatory Convertible Preferred Stock, or dividends thereon, and unclaimed at the end of two years from the date upon which such payment is due and payable shall revert to the general funds of the Company, after which reversion the Holders of such shares shall look only to the general funds of the Company for the payment thereof. Any interest accrued on funds so deposited shall be paid to the Company from time to time.

18

(xv) Except as may otherwise be required by law, the shares of Series C Senior Mandatory Convertible Preferred Stock shall not have any voting powers, preferences and relative, participating, optional or other special rights, other than those specifically set forth in this Certificate of Designations or the Restated Certificate of Incorporation.

(xvi) The headings of the various subdivisions hereof are for convenience of reference only and shall not affect the interpretation of any of the provisions hereof.

(xvii) If any of the voting powers, preferences and relative, participating, optional and other special rights of the Series C Senior Mandatory Convertible Preferred Stock and qualifications, limitations and restrictions thereof set forth herein is invalid, unlawful or incapable of being enforced by reason of any rule of law or public policy, all other voting powers, preferences and relative, participating, optional and other special rights of Series C Senior Mandatory Convertible Preferred Stock and qualifications, limitations and restrictions thereof set forth herein which can be given effect without the invalid, unlawful or unenforceable voting powers, preferences and relative, participating, optional and other special rights of Series C Senior Mandatory Convertible Preferred Stock and qualifications, limitations and restrictions thereof shall, nevertheless, remain in full force and effect, and no voting powers, preferences and relative, participating, optional or other special rights of Series C Senior Mandatory Convertible Preferred Stock and qualifications, limitations and restrictions thereof herein set forth shall be deemed dependent upon any other such voting powers, preferences and relative, participating, optional or other special rights of Series C Senior Mandatory Convertible Preferred Stock and qualifications. limitations and restrictions thereof unless so expressed herein.

(xviii) Shares of Series C Senior Mandatory Convertible Preferred Stock that (a) have not been issued on or before May 3, 2003 or (b) have been issued and reacquired in any manner, including shares purchased or redeemed or exchanged or converted, shall (upon compliance with any applicable provisions of the laws of Delaware) have the status of authorized but unissued shares of preferred stock of the Company undesignated as to series and may be designated or redesignated and issued or reissued, as the case may be, as part of any series of preferred stock of the Company, provided that any issuance of such shares as Series C Senior Mandatory Convertible Preferred Stock must be in compliance with the terms hereof.

(xix) If any of the Series C Senior Mandatory Convertible Preferred Stock certificates shall be mutilated, lost, stolen or destroyed, the Company shall issue, in exchange and in substitution for and upon cancellation of the mutilated Series C Senior Mandatory Convertible Preferred Stock certificate, or in lieu of and substitution for the Series C Senior Mandatory Convertible Preferred Stock certificate lost, stolen or destroyed, a new Series C Senior Mandatory Convertible Preferred Stock certificate of like tenor and representing an equivalent amount of shares of Series C Senior Mandatory Convertible Preferred Stock, but only upon receipt of evidence of such loss, theft or destruction of such Series C Senior Mandatory Convertible Preferred Stock certificate and indemnity, if requested. satisfactory to the Company and the Transfer Agent. The Company is not required to issue any certificates representing Series C Senior Mandatory Convertible Preferred Stock on or after the Conversion Date. In place of the delivery of a replacement certificate following the Conversion Date, the Transfer Agent, upon delivery of the evidence and indemnity described above, will deliver the shares of Common Stock pursuant to the terms of the Series C Senior Mandatory Convertible Preferred Stock evidenced by the certificate.

19

IN WITNESS WHEREOF, the Company has caused this certificate to be duly executed by Thomas H. Van Weelden, Chairman of the Board of Directors, President and Chief Executive Officer of the Company, and attested by Steven M. Helm, its Vice President, Legal, General Counsel and Corporate Secretary, this 8th day of April, 2003.

ALLIED WASTE INDUSTRIES, INC.

By: _____ /s/ Thomas H. Van Weelden
Name: Thomas H. Van Weelden
Title: Chairman of the Board of Directors, President and Chief Executive Officer

ATTEST:

By: _____ /s/ Steven M. Helm
Name: Steven M. Helm
Title: Vice President, Legal, General Counsel and Corporate Secretary

20



# STATE OF ARIZONA
# CORPORATION COMMISSION
# CORPORATION ANNUAL
# & CERTIFICATE OF DISCLOSURE



Arizona Corporation Commission

DUE ON OR BEFORE: 04/21/1999

FILING FEE $45.00

The following information is required by A.R.S. §10-1622 & §10-11622 for all corporations organized pursuant to Arizona Revised Statutes, Title 10. The Commission's authority to prescribe this form is A.R.S. §10-111.A. & §10-3121.A. [illegible] make changes or corrections where necessary. Information for the report should reflect the current status of the corporation. See instructions for proper format. **REFER TO THE INSTRUCTIONS ON PAGE 4.**

1.
```
ALLIED WASTE INDUSTRIES, INC.
15880 N GREENWAY/HAYDEN LOOP
#100
SCOTTSDALE, AZ 85260
```

**RECEIVED**

APR 02 1999

ARIZONA CORP. COMMISSION
CORPORATIONS DIVISION

Corporation File Number [illegible]    F-0710157-1

Business Phone:
State of Domicile: DELAWARE    Type of Corporation: PROFIT

2.  Arizona Statutory Agent: C T CORPORATION SYSTEM
    Street Address: 3225 N CENTRAL AVE
    (NOT P.O. BOX)
    City, State, Zip: PHOENIX    AZ 85012

Use this box only if appointing a new Statutory Agent.

I (individual) or We (corporation or limited liability company) having been designated the new Statutory Agent, do hereby consent to the appointment until my removal or resignation pursuant to law.

Signature of new Statutory Agent

3.  Secondary Address:
    C T CORPORATION TRUST COMPANY
    1209 ORANGE ST
    WILMINGTON, DE 19801

4.  Check the one category below which best describes the CHARACTER OF BUSINESS of your corporation.

BUSINESS CORPORATIONS

1. Accounting
2. Advertising
3. Aerospace
4. Agriculture
5. Architecture
6. Banking/Finance
7. Barbers/Cosmetology
8. Construction
9. Contractor
10. Credit Collection
11. Education
12. Engineering
13. Entertainment
14. General Consulting
15. Health Care
16. Hi-Tech
17. Import/Export
18. Insurance
19. Legal Services

20. Manufacturing
21. Mining
22. News Media
23. Pharmaceutical
24. Publishing/Printing
25. Ranching/Livestock
26. Real Estate
27. Restaurant/Bar
28. Retail Sales
29. Science/Research
30. Sports/Sporting Events
31. Technology/Computers
32. Technology/General
33. Travel/Wholesale
34. Trucking/Construction Services
35. Transportation
36. Utilities
37. Veterinary Medicine/Animal Care
38. Other [illegible]
    WASTE MANAGEMENT

NON-PROFIT CORPORATIONS

1. Charitable
2. Benevolent
3. Educational
4. Civic
5. Political
6. Religious
7. Social
8. Literary
9. Cultural
10. Athletic
11. Science/Research
12. Hospital/Health Care
13. Agriculture
14. Animal Husbandry
15. Homeowner's Association
16. Professional, commercial
17. financial or trade association

**EXHIBIT**
2
tabbies

Page 2

**5. CAPITALIZATION:** (Must show the number of shares and classes authorized and the number issued to date.) If the corporation is a Business trust, must indicate the number of transferable certificates held by trustees evidencing their beneficial interest in the trust estate.

| Number of Shares/Certificates Authorized | Class | Series Within Class (if any) |
|---|---|---|
| 30,000,000 | Common stock, par value $.01 | |
| 10,000,000 | preferred stock, par value $.10 | |
| Number of Shares/Certificates Issued | Class | Series Within Class (if any) |
| 187,637,123 | common stock, par value $.01 | |
| -0- | preferred stock, par value $.10 | |

**6. SHAREHOLDERS** (If no changes since last report, check here ___ and go on to Section 7.)
List shareholders holding more than 20% of any class of shares issued by the corporation, or having more than a 20% beneficial interest in the corporation.

NONE ☒

| Name: | Name: |
|---|---|
| Name: | Name: |

**7. OFFICERS** (If no changes since last report, check here ___ and go on to Section 8.)

| | | | |
|---|---|---|---|
| Name: | THOMAS VAN VEELDEN | Name: | MICHAEL G HANNON |
| Title: | PRESIDENT/CEO/ *Chairman* | Title: | VICE-PRESIDENT *Mergers & acquisitions* |
| Address: | 15880 N GREENWAY LOOP #100 | Address: | 15880 N GREENWAY-HAYDEN LOOP |
| | SCOTTSDALE, AZ 85260- | | SCOTTSDALE, AZ 85260- |
| Date taking office: 12-01-92 *(Chairman 1/1/97)* | | Date taking office: 04-01-94 | |
| Name: | STEVEN M HELA | Name: | G THOMAS ROCHFORD JR |
| Title: | SECRETARY/ *V.P. Legal* | Title: | TREASURER |
| Address: | 15880 N GREENWAY LOOP #100 | Address: | 15880 N GREENWAY LOOP #100 |
| | SCOTTSDALE, AZ 85260- | | SCOTTSDALE, AZ 85260- |
| Date taking office: 05-31-96 | | Date taking office: 07-02-97 | |

*See attached for additional officers*

**8. DIRECTORS** (If no changes since last report, check here ___ and go on to Section 9.)

| | | | |
|---|---|---|---|
| Name: | DAVID KAPLAN | Name: | NOLAN LEHMANN |
| Address: | 1999 AVE OF THE STARS STE 1900 | Address: | 2929 ALLEN PKWY 25TH FLOOR |
| | LOS ANGELES, CA 90067- | | HOUSTON, TX 77219- |
| Date taking office: 05-13-97 | | Date taking office: 10-01-90 | |
| Name: | DENNIS HENDRIX | Name: | MICHAEL GROSS |
| Address: | 5400 WESTHEIMER CT | Address: | 1301 AVE OF THE AMERICAS |
| | HOUSTON, TX 77056- | | NEW YORK, NY 10019- |
| Date taking office: 07-02-97 | | Date taking office: 05-13-97 | |

*See attached for additional directors*

Attachment to Corporation Annual Report &
Certificate of Disclosure
Allied Waste Industries, Inc.
Corporation File No. F-0710157-1

7. Continuation of list of Officers:

| | |
|---|---|
| Name: | Peter S. Hathaway |
| Title: | Vice President & Chief Accounting Officer |
| Address: | 15880 N. Greenway-Hayden Loop, Ste. 100, |
| | Scottsdale, Arizona 85260 |
| Date of taking office: | 5/31/96 (VP) & 2/95 (CAA) |

| | |
|---|---|
| Name: | Larry D. Henk |
| Title: | Vice President & Chief Operating Officer |
| Address: | 15880 N. Greenway-Hayden Loop, Ste. 100, |
| | Scottsdale, Arizona 85260 |
| Date of taking office: | 8/22/94 (VP) & 2/26/98 (COO) |

| | |
|---|---|
| Name: | Henry L. Hirvela |
| Title: | Vice President & Chief Financial Officer |
| Address: | 15880 N. Greenway-Hayden Loop, Ste. 100, |
| | Scottsdale, Arizona 85260 |
| Date of taking office: | 5/31/96 |

| | |
|---|---|
| Name: | Donald W. Slager |
| Title: | Vice President, Operations |
| Address: | 15880 N. Greenway-Hayden Loop, Ste. 100, |
| | Scottsdale, Arizona 85260 |
| Date of taking office: | 2/26/98 |

| | |
|---|---|
| Name: | James G. Van Weelden |
| Title: | Vice President, Compliance and Landfill Development |
| Address: | 3837 West 127th Street |
| | Alsip, Illinois 60803 |
| Date of taking office: | 3/4/99 |

| | |
|---|---|
| Name: | Jo Lynn White |
| Title: | Assistant Secretary |
| Address: | 15880 N. Greenway-Hayden Loop, Ste. 100, |
| | Scottsdale, Arizona 85260 |
| Date of taking office: | 3/4/99 |

| | |
|---|---|
| Name: | James Eng |
| Title: | Controller |
| Address: | 15880 N. Greenway-Hayden Loop, Ste. 100, |
| | Scottsdale, Arizona 85260 |
| Date of taking office: | 7/2/97 |

8. Directors:

| | |
|---|---|
| Name: | Howard Lipson |
| Address: | The Blackstone Group |
| | 345 Park Avenue, 31st Floor |
| | New York, NY 10154 |
| Date of taking office: | 5/13/97 |

| | |
|---|---|
| Name: | Roger A. Ramsey |
| Address: | 15880 N. Greenway-Hayden Loop, Ste. 100 |
| | Scottsdale, AZ 85260 |
| Date of taking office: | 8/17/89 |

| | |
|---|---|
| Name: | Antony Ressler |
| Address: | Apollo Advisors, L.P. |
| | 1999 Avenue of the Stars |
| | Suite 1900 |
| | Los Angeles, CA 90067 |
| Date of taking office: | 5/13/97 |

| | |
|---|---|
| Name: | Warren B. Rudman |
| Address: | Paul, Weiss, Rifkind, Wharton & Garrison |
| | 1615 L Street, NW, Suite 1300 |
| | Washington, DC 20036 |
| Date of taking office: | 7/2/97 |

| | |
|---|---|
| Name: | Vincent Tese |
| Address: | Bear Stearns & Co. |
| | 245 Park Avenue, 19th Floor |
| | New York, NY 10167 |
| Date of taking office: | 7/2/97 |

| | |
|---|---|
| Name: | Thomas H. Van Weelden |
| Address: | 15880 N. Greenway-Hayden Loop, Ste. 100, |
| | Scottsdale, Arizona 85260 |
| Date of taking office: | 3/3/92 |

2

- Please Enter Corporation Name: *Allied Waste Industries, Inc.*    Page 3

**9. FINANCIAL DISCLOSURE (A.R.S. §§10-1622.B & 10-11622.A.9)**
Only nonprofit corporations must attach a financial statement (balance sheet including assets, liabilities and equity). All other forms of corporations are exempt from filing a financial disclosure.

**9A. MEMBERS (A.R.S. § 10-11622.A.6)** NONPROFIT CORPORATIONS
This corporation **does** ☐ **does not** ☐ have members.

**10. CERTIFICATE OF DISCLOSURE (A.R.S. §§10-1622 A.8 & 10-3202.A)**
Has ANY person serving either by election or appointment as an officer, director, trustee, incorporator and person controlling or holding more than 10% of the issued and outstanding common shares or 10% of any other proprietary, beneficial or membership interest in the corporation been:

1. Convicted of a felony involving a transaction in securities, consumer fraud or antitrust in any state or federal jurisdiction within the seven year period immediately preceding the execution of this certificate?
2. Convicted of a felony, the essential elements of which consisted of fraud, misrepresentation, theft by false pretenses or restraint of trade or monopoly in any state or federal jurisdiction within the seven year period immediately preceding execution of this certificate?
3. Or are subject to an injunction, judgment, decree or permanent order of any state or federal court entered within the seven year period immediately preceding execution of this certificate where such injunction, judgment, decree or permanent order involved the violation of:

   (a) fraud or registration provisions of the securities laws of that jurisdiction; or,
   (b) the consumer fraud laws of that jurisdiction; or
   (c) the antitrust or restraint of trade laws of that jurisdiction?

   PLACE AN "X" IN APPROPRIATE BOX    **YES** ☐    **NO** ☒

If "YES", the following information must be submitted as an attachment to this report for each person subject to one or more of the actions stated in items 1 through 3, above.

1. Full name and prior names used.
2. Full birth name.
3. Present home address.
4. Prior addresses (for immediate preceding 7 year period).

5. Date and location of birth.
6. Social Security Number.
7. The nature and description of each conviction or judicial action, the date and location the court and public agency involved, and the file or cause number of the case.

**11. STATEMENT OF BANKRUPTCY (A.R.S. §10-202.D.2)**
Has ANY person serving either by election or appointment as an officer, director, trustee, incorporator and person controlling or holding more than 20% of the issued and outstanding common shares or 20% of any other proprietary, beneficial or membership interest in the corporation served in each capacity or held a 20% interest in any other corporation during the bankruptcy, receivership, or charter revocation of the other corporation?

PLACE AN "X" IN APPROPRIATE BOX    **YES** ☐    **NO** ☒

IF "YES" COMPLETE BELOW    Chapter _____    Date Filed _____    Case Number _____

**12. SIGNATURES**

THIS DOCUMENT MUST BE SIGNED BY THE CHAIRMAN, PRESIDENT OR OTHER OFFICER AUTHORIZED AND AT LEAST ONE OTHER DULY AUTHORIZED OFFICER.

I DECLARE, UNDER PENALTY OF LAW, THAT ALL CORPORATE INCOME TAX RETURNS REQUIRED BY TITLE 43 OF THE ARIZONA REVISED STATUTES HAVE BEEN FILED WITH THE ARIZONA DEPARTMENT OF REVENUE.

I further declare under penalty of law that I (we) have examined this report and the certificate, including any attachments, and to the best of my (our) knowledge and belief they are true, correct and complete.

Name *Steven M. Helm*    Date *4/1/98*    Name _____    Date _____

Signature *[signature]*    Signature _____

Title *Vice President, Legal & Secretary*    Title _____
(Signator(s) must be duly authorized corporate officer(s) listed in section 7 of this report.)



E-FILED

**STATE OF ARIZONA
CORPORATION COMMISSION**
CORPORATION ANNUAL REPORT
& CERTIFICATE OF DISCLOSURE

01545872

| DUE ON OR BEFORE 04/21/2006 | FY05-06 | FILING FEE $45 |

The following information is required by A.R.S. §§10-1622 & 10-11622 for all corporations organized pursuant to Statutes, Title 10. The Commission's authority to prescribe this form is A.R.S. §§10-121.A. **YOUR REPORT MUST BE SUBMITTED ON THIS ORIGINAL FORM.** Make changes or corrections where necessary for the report should reflect the current status of the corporation. See instructions on page 4 for proper format.

1. F-0710157-1
   ALLIED WASTE INDUSTRIES, INC.
   15880 N GREENWAY/HAYDEN LOOP
   #100
   SCOTTSDALE, AZ  85260

   **Business Phone:** _____  (Business phone is optional.)

   **State of Domicile:** DELAWARE  **Type of Corporation:** PROFIT

2. Statutory Agent: C T CORPORATION SYSTEM
   Mailing Address: 3225 N CENTRAL AVE
   City, State, Zip: PHOENIX, AZ  85012

   Physical Address, if Different:
   Physical Address:
   City, State, Zip: AZ

   | ACC USE ONLY | |
   |---|---|
   | Fee | $ 45.00 |
   | Penalty | $_____ |
   | Reinstate | $_____ |
   | Expedite | $_____ |
   | Resubmit | $_____ |

   **Use this box only if appointing a new Statutory**

   If appointing a new statutory agent, the new agent MUST consent to that appointment by signing below.

   I, (individual) or We, (corporation or limited liability company) having been designated the new St do hereby consent to this appointment until my removal or resignation pursuant to law.

   _____
   Signature of new Statutory Agent

   _____
   Printed Name of new Statutory Agent

3. **Secondary Address:**

   (Foreign Corporations are **REQUIRED** to complete this section).

   % CORPORATION TRUST COMPANY
   1209 ORANGE ST
   WILMINGTON, DE  19801

4. **CHARACTER OF BUSINESS**

   NON-HAZARDOUS SOLID WASTE MANAGEMENT

   **EXHIBIT**
   3

F-0710157-1   ALLIED WASTE INDUSTRIES, INC.

**5. CAPITALIZATION:**   (Business Corporations and Business Trusts are **REQUIRED** to complete this section.)

Business trusts must indicate the number of transferable certificates held by trustees evidencing their benefic
the trust estate.  Please examine the corporation's original Articles of Incorporation for the amount of shares
Review all corporation amendments to determine if the original number of shares has changed.  Examine the
minutes for the number of shares issued.

| Number of Shares/Certificates **Authorized** | Class | Series Within Class (if any) |
|---|---|---|
| 525000000 | COMMON | |
| 10000000 | PREFERRED | SERIES C/SE |

| Number of Shares/Certificates **Issued** | Class | Series Within Class (if any) |
|---|---|---|
| 331006190 | COMMON | |
| 750000 | PREFERRED | SERIES C/SE |

**6. SHAREHOLDERS** (Business Corporations and Business Trusts are **REQUIRED** to complete this section.)
List shareholders holding more than 20% of any class of shares issued by the corporation, or having more
beneficial interest in the corporation.

NOT APPLICABLE

**7. OFFICERS**

Name: JOHN J ZILLMER
Title: CHIEF EXECUTIVE OFFICER
Address: 15880 N GREENWAY-HAYDEN LOOP
         SUITE 100
         SCOTTSDALE, AZ  85260
Date Taking Office: 05/27/2005

Name: DONALD WSLAGER
Title: PRESIDENT
Address: 15880 N. GREENWAY-HA
         SUITE 100
         SCOTTSDALE, AZ  85260
Date Taking Office: 01/03/2005

Name: STEVEN M HELM
Title: SECRETARY
Address: 15880 N. GREENWAY-HAYDEN LOOP
         SUITE 100
         SCOTTSDALE, AZ  85260
Date Taking Office: 01/03/2005

Name: MICHAEL S BURNETT
Title: TREASURER
Address: 15880 N. GREENWAY-HA
         SUITE 100
         SCOTTSDALE, AZ  85260
Date Taking Office: 02/10/200

**8. DIRECTORS**

Name: JOHN J ZILLMER
Address: 15880 N GREENWAY-HAYDEN LOOP
         SUITE 100
         SCOTTSDALE, AZ  85260
Date Taking Office: 05/27/2005

Name: NOLAN LEHMANN
Address: EQUUS CAPITAL CORP
         2727 ALLEN PARKWAY
         13TH FLOOR
         HOUSTON, TX  77019
Date Taking Office: 10/01/1990

F-0710157-1   ALLIED WASTE INDUSTRIES, INC.
Additional officers and directors:

## OFFICERS:

Name: MICHAEL S BURNETT
Title: VICE-PRESIDENT
Address: 15880 N GREENWAY-HAYDEN LOOP
SUITE 100
SCOTTSDALE, AZ 85260
Date Taking Office: 11/09/2001

Name: ROBERT A ALBERICO
Title: VICE-PRESIDENT
Address: 15880 N GREENWAY-HAYI
SUITE 100
SCOTTSDALE, AZ 85260
Date Taking Office: 08/16/2004

Name: JOHN S QUINN
Title: VICE-PRESIDENT
Address: 15880 N. GREENWAY-HAYDEN LOOP
SUITE 100
SCOTTSDALE, AZ 85260
Date Taking Office: 01/03/2005

Name: JAMES E GRAY
Title: VICE-PRESIDENT
Address: 15880 N. GREENWAY-HA
SUITE 100
SCOTTSDALE, AZ 85260
Date Taking Office: 01/22/200

Name: DONALD A SWIERENGA
Title: VICE-PRESIDENT
Address: 15880 N. GREENWAY-HAYDEN LOOP
SUITE 100
SCOTTSDALE, AZ 85260
Date Taking Office: 01/03/2005

Name: DALE L PARKER
Title: VICE-PRESIDENT
Address: 15880 N. GREENWAY-HA
SUITE 100
SCOTTSDALE, AZ 85260
Date Taking Office: 11/09/200

Name: JO LYNN WHITE
Title: VICE-PRESIDENT
Address: 15880 N GREENWAY LOOP #100
SCOTTSDALE, AZ 85260
Date Taking Office: 03/04/1999

Name: PETER S HATHAWAY
Title: VICE-PRESIDENT
Address: 15880 N. GREENWAY-HA
SUITE 100
SCOTTSDALE, AZ 85260
Date Taking Office: 06/24/200

## DIRECTORS:

Name: JOSHUA J HARRIS
Address: 15880 N GREENWAY-HAYDEN LOOP
SUITE 100
SCOTTSDALE, AZ 85260
Date Taking Office: 09/29/2005

Name: STEVE MARTINEZ
Address: 15880 N GREENWAY-HAYI
SUITE 100
SCOTTSDALE, AZ 85260
Date Taking Office: 03/16/200

Name: JAMES A QUELLA
Address: C/O BLACKSTONE GROUP
345 PARK AVENUE
31ST FLOOR
NEW YORK, NY 10154
Date Taking Office: 08/01/2005

Name: DENNIS R HENDRIX
Address: DUKE ENERGY
5400 WESTHEIMER COUR
HOUSTON, TX 77056
Date Taking Office: 07/02/199

Name: JAMES CROWNOVER
Address: TWO HOUSTON CENTER
909 FANNIN
SUITE 3675
HOUSTON, TX 77010
Date Taking Office: 12/02/2002

Name:
Address:
Date Taking Office:

F-0710157-1   ALLIED WASTE INDUSTRIES, INC.

## 9. FINANCIAL DISCLOSURE (A.R.S. §10-11622.A.9)

Nonprofit corporations **must attach** a financial statement (e.g. income/expense statement, balance sheet including asse
All other forms of corporations are exempt from filing a financial disclosure.

## 9A. MEMBERS (A.R.S. § 10-11622.A.6)

| Only Nonprofit Corporations must answer this question. |    This corporation **DOES** ☐ **DOES NOT** ☐ ha

## 10. CERTIFICATE OF DISCLOSURE (A.R.S. §§10-1622.A.8 & 10-11622.A.7)

Has ANY person serving either by election or appointment as an officer, director, trustee, incorporator and/or person control
more than 10% of the issued and outstanding common shares or 10% of any other proprietary, beneficial or membership
corporation been: [Underlined portion pertains to business corporations only]

1.  Convicted of a felony involving a transaction in securities, consumer fraud or antitrust in any state or federal jurisdic
    seven year period immediately preceding the execution of this certificate?
2.  Convicted of a felony, the essential elements of which consisted of fraud, misrepresentation, theft by false pretenses
    trade or monopoly in any state or federal jurisdiction within the seven year period immediately preceding execution of t
3.  Or are subject to an injunction, judgment, decree or permanent order of any state or federal court entered within t
    period immediately preceding execution of this certificate where such injunction, judgment, decree or permanent orde
    violation of:
    (a) fraud or registration provisions of the securities laws of that jurisdiction, or
    (b) the consumer fraud laws of that jurisdiction, or
    (c) the antitrust or restraint of trade laws of that jurisdiction?

| One box **must** be marked: |    YES ☐

If "YES", the following information **must be submitted** as an attachment to this report for each person subj
more of the actions stated in Items 1. through 3. above.

1. Full name and prior names used.          5. Date and location of birth.
2. Full birth name.                         6. Social Security Number.
3. Present home address.                     7. The nature and description of each conviction or j
4. Prior addresses (for immediate               the date and location; the court and public agency
   preceding 7 year period).                     the file or cause number of the case.

## 11. STATEMENT OF BANKRUPTCY, RECEIVERSHIP or CHARTER REVOCATION (A.R.S. §§10-202.D.2, 10-1623 & 10-11623)

A) Has the corporation filed a petition for bankruptcy or appointed a receiver? | One box **must** be marked: |   YES (

B) Has any person serving as an officer, director, trustee or incorporator of the corporation served in any such capaci
controlled over 20% of the issued and outstanding common shares, or 20% of any other proprietary, beneficial or memb
in any corporation which has been placed in bankruptcy, receivership or had its charter revoked, or administratively or judic
by any state or jurisdiction?

[Underlined portion pertains to business corporations only] | One box **must** be marked: |   YES (

If "YES" to A and/or B, the following information **must be submitted** as an attachment to this report for each per
statement above.
1.  The names and addresses of each corporation and the person or persons involved. (e.g. officer, director,
    stockholder)
2.  The state in which each corporation was a) incorporated b) transacted business.
3.  The dates of corporate operation.
4.  If any involved person (listed in #1) has been involved in any other bankruptcy proceeding within the past ye
    address of each corporation.
5.  Date, Case number and Court where the bankruptcy was filed or receiver appointed.
6.  Name and address of court appointed receiver.

## 12. SIGNATURES: Annual Reports must be signed and dated by at least one duly authorized officer or they will b

I declare, under penalty of law that all corporate income tax returns required by Title 43 of the Arizona Revised S
been filed with the Arizona Department of Revenue. I further declare under penalty of law that I (we) have examin
and the certificate, including any attachments, and to the best of my (our) knowledge and belief they are true
complete.

STEVEN M HEIM                     04/13/2006

PAGE 1

*State of Delaware*

## *Office of the Secretary of State*

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF

DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT

COPY OF THE CERTIFICATE OF AMENDMENT OF "ALLIED HOLDINGS (UNITED

STATES), INC.", CHANGING ITS NAME FROM "ALLIED HOLDINGS (UNITED

STATES), INC." TO "ALLIED WASTE NORTH AMERICA, INC.", FILED IN

THIS OFFICE ON THE EIGHTEENTH DAY OF NOVEMBER, A.D. 1996, AT

2:30 O'CLOCK P.M.

A CERTIFIED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO

THE NEW CASTLE COUNTY RECORDER OF DEEDS FOR RECORDING.



*Edward J. Freel, Secretary of State*

2661650  8100

960336827

AUTHENTICATION:     8198692

DATE:

11-19-96

# CERTIFICATE OF AMENDMENT

## OF

## ALLIED HOLDINGS (UNITED STATES), INC.

Pursuant to Section 241 of the General Corporation Law of the State of Delaware (the "DGCL"), Allied Holdings (United States), Inc. (the "Corporation"), a corporation organized and existing under the DGCL, does hereby certify that:

1. The Corporation has not received payment for any of its stock; and

2. The amendment to the Certificate of Incorporation of the Corporation (the "Certificate of Incorporation") set forth below has been duly adopted in accordance with the provisions of Section 241 of the DGCL.

The Certificate of Incorporation is hereby amended such that Article I reads as follows in its entirety:

The name of the corporation is Allied Waste North America, Inc.

The undersigned, sole Director of the Corporation, executes this Certificate of Amendment as of November 1, 1996.

Roger A. Ramsey

# CERTIFICATE OF AMENDMENT

## OF

## ALLIED HOLDINGS (UNITED STATES), INC.

Pursuant to Section 241 of the General Corporation Law of the State of Delaware (the "DGCL"), Allied Holdings (United States), Inc. (the "Corporation"), a corporation organized and existing under the DGCL, does hereby certify that:

1.  The Corporation has not received payment for any of its stock; and

2.  The amendment to the Certificate of Incorporation of the Corporation (the "Certificate of Incorporation") set forth below has been duly adopted in accordance with the provisions of Section 241 of the DGCL.

The Certificate of Incorporation is hereby amended such that Article I reads as follows in its entirety:

The name of the corporation is Allied Waste North America, Inc.

The undersigned, sole Director of the Corporation, executes this Certificate of Amendment as of November 1, 1996.

Roger A. Ramsey

*State of Delaware*                    PAGE   1

# *Office of the Secretary of State*

---

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF

DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT

COPY OF THE CERTIFICATE OF INCORPORATION OF "ALLIED HOLDINGS

(UNITED STATES), INC.", FILED IN THIS OFFICE ON THE ELEVENTH DAY

OF SEPTEMBER, A.D. 1996, AT 12:30 O'CLOCK P.M.



*Edward J. Freel, Secretary of State*

AUTHENTICATION:          8187463

2661650   8100                 DATE:

960328994                              11-12-96

# CERTIFICATE OF INCORPORATION

## of

# ALLIED HOLDINGS (UNITED STATES), INC.

### ARTICLE I
### Name

The name of the corporation is Allied Holdings (United States), Inc.

### ARTICLE II
### Registered Office and Registered Agent

The registered office of the Corporation in the State of Delaware is located at Corporation Trust Center, 1209 Orange Street, City of Wilmington, County of New Castle. The name of the Corporation's registered agent at such address is The Corporation Trust Company.

### ARTICLE III
### Corporate Purposes

The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware ("DGCL").

### ARTICLE IV
### Capital Stock

The total number of shares of all classes of capital stock which the Corporation shall have authority to issue is 1,000 shares, all of which shall be Common Stock of the par value of $0.01 per share.

### ARTICLE V
### Corporate Existence

The Corporation is to have perpetual existence.

1

## ARTICLE VI
### Bylaws Amendments

The Board of Directors is expressly authorized to adopt, alter, amend or repeal the bylaws of the Corporation or to adopt new bylaws.

## ARTICLE VII
### Indemnification of Directors, Officers and Others

Section 1.    Indemnification by Corporation. (a) Any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Corporation) by reason of the fact that he is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent (including trustee) of another corporation, partnership, joint venture, trust or other enterprise, expressly including service as a director, officer or in a similar position with any exchange, board of trade, clearing corporation or similar institution on which the Corporation or any other corporation a majority of the stock of which is owned directly or indirectly by the Corporation had membership privileges at the relevant time during which any such position was held, shall be indemnified by the Corporation (funds paid or required to be paid to any person as a result of the provisions of this Article shall be returned to the Corporation or reduced, as the case may be, to the extent that such person receives funds pursuant to an indemnification from any such other corporation or organization) against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such person in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. Any such person who could be indemnified pursuant to the preceding sentence except for the fact that the subject action or suit is or was by or in the right of the Corporation shall be indemnified by the Corporation against expenses (including attorneys' fees) actually or reasonably incurred by him in connection with the defense or settlement of such action or suit, except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable for negligence or misconduct in the performance of his duty to the Corporation unless and only to the extent that the Court of Chancery of the State of Delaware or the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which the court of Chancery or such other court shall deem proper.

(b)    To the extent that a director, officer, employee or agent of the Corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in paragraph (a) of this Section 1, or in defense of any claim, issue or matter therein, he shall be indemnified by the Corporation against expenses (including attorneys' fees) actually and reasonably

2

incurred by him in connection therewith without the necessity of any action being taken by the Corporation other than the determination, in good faith, that such defense has been successful. In all other cases wherein such indemnification is provided by this Article, unless ordered by a court, indemnification shall be made by the Corporation only as authorized in the specific case upon a determination that indemnification of the director, officer, employee or agent is proper in the circumstances because he has met the applicable standard of conduct specified in this Article. Such determination shall be made (1) by the Board of Directors by a majority vote of a quorum consisting of directors who were not parties to such action, suit or proceeding, or (2) if such quorum is not obtainable, or, even if obtainable a quorum of disinterested directors so directs, by independent legal counsel in a written opinion, or (3) by the holders of a majority of the shares of capital stock of the Corporation entitled to vote thereon.

(c)     The termination of any action, suit or proceeding by judgment, order, settlement, conviction or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person seeking indemnification did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful. Entry of a judgment by consent as part of a settlement shall not be deemed a final adjudication of liability for negligence or misconduct in the performance of duty, nor of any other issue or matter.

(d)     Expenses incurred in defending a civil or criminal action, suit or proceeding may be paid by the Corporation in advance of the final disposition of such action, suit or proceeding as authorized by the Board of Directors in the specific case upon receipt of an undertaking by the director, officer, employee or agent involved to repay such amount unless it shall ultimately be determined that he is entitled to be indemnified by the Corporation.

(e)     The indemnification hereby provided shall not be deemed exclusive of any other rights to which those seeking indemnification may be entitled under any by-law, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in an official capacity and as to action in another capacity while holding such office, and shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of the heirs, executors and administrators of such person.

Section 2.     Insurance. By action of the Board of Directors, notwithstanding any interest of the directors in the action, the Corporation may purchase and maintain insurance, in such amounts as the Board of Directors deems appropriate, on behalf of any Person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent (including trustee) of another corporation, partnership, joint venture, trust or other enterprise against any liability asserted against him and incurred by him in any such capacity, or arising out of his status as such, whether or not the Corporation shall have the power to indemnify him against such liability under the provisions of this Article.

3

## ARTICLE VIII
## Limited Director Liability

No director of the Corporation shall be personally liable to the Corporation or to its stockholders for monetary damages for breach of fiduciary duty as a director, provided that this Article VIII shall not eliminate or limit the liability of a director:

(1) for any breach of the director's duty of loyalty to the Corporation or its stockholders,

(2) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law,

(3) under Section 174 of the DGCL, as it may hereafter be amended from time to time, for any unlawful payment of a dividend or unlawful stock purchase or redemption, or

(4) for any transaction from which the director derived an improper personal benefit.

If the DGCL is amended to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the Corporation shall be eliminated or limited to the fullest extent permitted by the DGCL, as so amended. No amendment to or repeal of this Article VIII will apply to, or have any effect on, the liability or alleged liability of any director of the Corporation for or with respect to any acts or omissions of the director occurring prior to such amendment or repeal.

## ARTICLE IX
## Initial Directors

The powers of the incorporator will terminate upon the filing of this Certificate. The names and mailing addresses of the initial directors is:

| Name | Mailing Address |
|------|-----------------|
| Roger A. Ramsey | 7201 East Camelback Road, Suite 375 Scottsdale, Arizona 85251 |

4

## ARTICLE X
### Incorporator

The name and mailing address of the incorporator is as follows:

<u>Name</u>                              <u>Mailing Address</u>

Fred S. Stovall                         700 Louisiana, 35th Floor
                                        Houston, Texas 77002-2764

The undersigned, being the incorporator, executes this Certificate as of eptember 11, 1996.

Fred S. Stovall

5

# PORTER & HEDGES, L.L.P.

ATTORNEYS AT LAW

700 LOUISIANA, 35th FLOOR

HOUSTON, TEXAS 77002-2764

FRED S. STOVALL

(713) 226-0649

MAILING ADDRESS:

P. O. BOX 4744

HOUSTON, TX 77210-4744

TELECOPIER (713) 228-4935

TELEPHONE (713) 226-0600

November 26, 1996

*Via Federal Express*

Ms. Sue Shipman
Allied Waste Industries, Inc.
7201 Camelback Road
Suite 375
Scottsdale, Arizona 85251

Re:     Certificate of Amendment to the Certificate of Incorporation of Allied Waste North
America, Inc. (formerly Allied Holdings (United States), Inc.)

Dear Sue:

As we discussed, enclosed is the original, certified copy of the Certificate of Amendment of
the Certificate of Incorporation of Allied Waste North America, Inc. (formerly Allied Holdings
(United States), Inc.) for your records. If you have any questions, pleased don't hesitate to give me
a call at (713) 226-0649.

Yours very truly,

Fred S. Stovall

Encls.

::ODMA\PCDOCS\DOCS\97880\1



**STATE OF ARIZO**
**CORPORATION COMM**
**CORPORATION ANNUAL F**
**& CERTIFICATE OF DISCL**



DUE ON OR BEFORE: 04/09/1998                    FILING FEE $45.00

The following information is required by A.R.S. §10-1622 & §10-11622 for all corporations organized pursuant to Arizona Revised Statutes, Title 10. The Commission is authority to prescribe this form is A.R.S. §10-121.A. & §10-3121.A. *PLEASE TYPE OR PRINT IN BLACK INK.* Make changes or corrections where necessary. Information for the report should reflect the current status of the corporation. See instructions for proper format. REFER TO THE INSTRUCTIONS ON PAGE 4.

1.
   ALLIED WASTE NORTH AMERICA, INC.
   15880 N GREENWAY-HAYDEN LOOP
   #100
   SCOTTSDALE AZ 85260

                                              RECEIVE
                                              APR 02 1998

   Business Phone:
   State of Domicile: DELAWARE

   Corporation File Number:          F-0793473-7
   Type of Corporation: BUSINESS

2.     Arizona Statutory Agent: C T CORPORATION SYSTEM
       Street Address: 3225 N CENTRAL AVE
       (NOT P.O. BOX)
       City, State, Zip: PHOENIX              AZ 85012-

       *Use this box only if appointing a new Statutory Agent*

       I, (individual) or We, (corporation or limited liability company) having been designated the new Statutory Agent, do hereby consent to this appointment until my removal or resignation pursuant to law.

       Signature of new Statutory Agent

       1201 ORANGE ST
       WILMINGTON, DE 19801

3.  Secondary Address:

4.  Check the one category below which best describes the CHARACTER OF BUSINESS of your corporation.

**BUSINESS CORPORATIONS**
1. Accounting
2. Advertising
3. Aerospace
4. Agriculture
5. Architecture
6. Banking/Finance
7. Barbers/Cosmetology
8. Construction
9. Contractor
10. Credit/Collection
11. Education
12. Engineering
13. Entertainment
14. General Consulting
15. Health Care
16. Insurance
17. Import/Export
18. Insurance
19. Legal Services

20. Manufacturing
21. Mining
22. News Media
23. Pharmaceutical
24. Publishing/Printing
25. Ranching/Livestock
26. Real Estate
27. Restaurant/Bar
28. Retail Sales
29. Science/Research
30. Sports/Sporting Events
31. Technology (Computers)
32. Technology (General)
33. Television/Radio
34. Tourism/Convention Services
35. Transportation
36. Utilities
37. Veterinary Services/Animal Care
X 30. Other Waste Hauling
   Trash removal

**NON-PROFIT CORPORATIONS**
1. Charitable
2. Benevolent
3. Educational
4. Civic
5. Political
6. Religious
7. Social
8. Literary
9. Cultural
10. Athletic
11. Science/Research
12. Hospital/Health Care
13. Agricultural
14. Animal Husbandry
15. Professional Association
16. Professional, commercial, industrial or trade association
17. Other

EXHIBIT
5

tabbies

Page 2

**5. CAPITALIZATION:** Business trust must indicate the number of transferable certificates held by trustees evidencing their beneficial interest in the trust estate.

| Number of Shares/Certificates Authorized | Class | Series Within Class (if any) |
|---|---|---|
| 7,000 | Common, | .01 per value |

| Number of Shares/Certificates Issued | Class | Series Within Class (if any) |
|---|---|---|
| 1,000 | Common | .01 per value |

**6. SHAREHOLDERS:** List shareholders holding more than 20% of any class of shares issued by the corporation, or having more than a 20% beneficial interest in the corporation.

Name: Allied Waste Industries Inc.    Name:

NONE ☐

Name:    Name:

**7. OFFICERS** (If no changes since last report, check here ___ and go on to Section 8.)

| Name: | THOMAS H. VAN WEELDEN | Name: | MICHAEL G. HANNON |
|---|---|---|---|
| Title: | PRESIDENT/CEO | Title: | VICE-PRESIDENT |
| Address: | 15880 N. GREENWAY HAYDEN LOOP | Address: | 15880 N. GREENWAY HAYDEN LOOP |
| | SCOTTSDALE, AZ 85260- | | SCOTTSDALE, AZ 85260- |

Date taking office: 11-01-96    Date taking office: 11-01-96

| Name: | STEVEN M. HELM | Name: | G. THOMAS ROCHFORD JR. |
|---|---|---|---|
| Title: | Corp. SECRETARY/V.P., Legal | Title: | TREASURER |
| Address: | 15880 N. GREENWAY HAYDEN LOOP | Address: | 15880 N. GREENWAY HAYDEN LOOP |
| | SCOTTSDALE, AZ 85260- | | SCOTTSDALE, AZ 85260- |

Date taking office: 11-01-96    Date taking office: 11-01-96

See statement for additional officers

**8. DIRECTORS** (If no changes since last report, check here X and go on to Section 9.)

| Name: | THOMAS H. VAN WEELDEN | Name: | STEVEN M. HELM |
|---|---|---|---|
| Address: | 15880 N. GREENWAY HAYDEN LOOP | Address: | 15880 N. GREENWAY HAYDEN LOOP |
| | SCOTTSDALE, AZ 85260- | | SCOTTSDALE, AZ 85260- |

Date taking office: 11-01-96    Date taking office: 11-01-96

| Name: | HENRY L. HIRVELA | Name: | |
|---|---|---|---|
| Address: | 15880 N. GREENWAY HAYDEN LOOP | Address: | |
| | SCOTTSDALE, AZ 85260- | | |

Date taking office: 11-01-96    Date taking office:

Attachment to Corporation Annual Report &
Certificate of Disclosure
Allied Waste North America, Inc.
Corporation File No. F-0793473-7

Continuation of list of Officers:

| | |
|---|---|
| Name: | Peter S. Hathaway |
| Title: | Vice President & Chief Accounting Officer |
| Address: | 15880 N. Greenway-Hayden Loop, Ste. 100, |
| | Scottsdale, Arizona 85260 |
| Date of taking office: | 11/1/96 |

| | |
|---|---|
| Name: | Larry D. Henk |
| Title: | Vice President & Chief Operating Officer |
| Address: | 15880 N. Greenway-Hayden Loop, Ste. 100, |
| | Scottsdale, Arizona 85260 |
| Date of taking office: | 11/1/96 |

| | |
|---|---|
| Name: | Henry L. Hirvela |
| Title: | Vice President & Chief Financial Officer |
| Address: | 15880 N. Greenway-Hayden Loop, Ste. 100, |
| | Scottsdale, Arizona 85260 |
| Date of taking office: | 11/1/96 |

| | |
|---|---|
| Name: | Donald W. Slager |
| Title: | Vice President - Operations |
| Address: | 15880 N. Greenway-Hayden Loop, Ste. 100, |
| | Scottsdale, Arizona 85260 |
| Date of taking office: | 2/26/98 |

| | |
|---|---|
| Name: | Jo Lynn White |
| Title: | Secretary |
| Address: | 15880 N. Greenway-Hayden Loop, Ste. 100, |
| | Scottsdale, Arizona 85260 |
| Date of taking office: | 2/1/99 |

| | |
|---|---|
| Name: | James Eng |
| Title: | Controller |
| Address: | 15880 N. Greenway-Hayden Loop, Ste. 100, |
| | Scottsdale, Arizona 85260 |
| Date of taking office: | 5/1/97 |

Name:          Kimberly R. Boll
Title:         Assistant Secretary
Address:       15880 N. Greenway-Hayden Loop, Ste. 100
               Scottsdale, Arizona 85260
Date of taking office:   12/1/97

Name:          Jenny L. Apker
Title:         Assistant Secretary
Address:       15880 N. Greenway-Hayden Loop, Ste. 100
               Scottsdale, Arizona 85260
Date of taking office:   12/1/97

Please Enter Corporation Name: *Allied White North America, Inc.*    Page 3

**9. FINANCIAL DISCLOSURE (A.R.S. §§10-1622.D & 10-11622.A.9)**
Only nonprofit corporations must attach a financial statement (balance sheet including assets, liabilities and equity). All other forms of corporations are exempt from filing a financial disclosure.

**9A. MEMBERS (A.R.S. § 10-11622.A.9) Nonprofit Corporations Only.**

The corporation **does** ☐ **does not** ☐ have members.

**10. CERTIFICATE OF DISCLOSURE (A.R.S. §§10-1622.A.X & 10-2905.A)**
Has ANY person serving either by election or appointment as an officer, director, trustee, incorporator and person controlling or holding more than 10% of the issued and outstanding common shares or 10% of any other proprietary, beneficial or membership interest in the corporation been:

1. Convicted of a felony involving a transaction in securities, consumer fraud or antitrust in any state or federal jurisdiction within the seven year period immediately preceding the execution of this certificate?
2. Convicted of a felony, the essential elements of which consisted of fraud, misrepresentation, theft by false pretenses or restraint of trade or monopoly in any state or federal jurisdiction within the seven year period immediately preceding execution of this certificate?
3. Or are subject to an injunction, judgment, decree or permanent order of any state or federal court entered within the seven year period immediately preceding execution of this certificate where such injunction, judgment, decree or permanent order involved the violation of:
   (a) fraud or registration provisions of the securities laws of that jurisdiction; or
   (b) the consumer fraud laws of that jurisdiction; or
   (c) the antitrust or restraint of trade laws of that jurisdiction?

CHECK APPROPRIATE BOX    **YES** ☐    **NO** ☒

If "YES", the following information must be submitted as an attachment to this report for each person subject to one or more of the actions stated in items 1 through 3, above:

1. Full name and prior names used.
2. Full birth name.
3. Present home address.
4. Prior addresses (for immediate preceding 7 year period).
5. Date and location of birth.
6. Social Security Number.
7. The nature and description of each conviction or judicial action, the date and location; the court and public agency involved; and the file or cause number of the case.

**11. STATEMENT OF BANKRUPTCY (A.R.S. §10-2912.D.2)**
Has ANY person serving either by election or appointment as an officer, director, trustee, incorporator and person controlling or holding more than 20% of the issued and outstanding common shares or 20% of any other proprietary, beneficial or membership interest in the corporation served in such capacity or held a 20% interest in any other corporation during the bankruptcy, receivership or charter revocation of the other corporation?

CHECK APPROPRIATE BOX    **YES** ☐    **NO** ☒

IF YES, PLEASE FILL IN FOLLOWING:    Chapter _____    Date Filed _____    Case Number _____

**12. SIGNATURES**

I DECLARE, UNDER PENALTY OF LAW, THAT ALL CORPORATE INCOME TAX RETURNS REQUIRED BY TITLE 43 OF THE ARIZONA REVISED STATUTES HAVE BEEN FILED WITH THE ARIZONA DEPARTMENT OF REVENUE.

I/we declare under penalty of law that I (we) have examined this report and the certificate, including any attachments, and to the best of my (our) knowledge and belief they are true, correct and complete.

Name *Steven W. Hicks*    Date *3-22-??*    Name _____    Date _____
Signature _____    Signature _____
Title *Vice President Legal + Secretary*    Title _____

(Signature(s) must be duly authorized corporate officer(s) listed in section 7 of this report.)



E-FILED

# STATE OF ARIZONA
# CORPORATION COMMISSION
## CORPORATION ANNUAL REPORT
## & CERTIFICATE OF DISCLOSURE

01535025

| DUE ON OR BEFORE | 04/09/2006 | FY05-06 | FILING FEE | $45 |

The following information is required by A.R.S. §§10-1622 & 10-11622 for all corporations organized pursuant to Statutes, Title 10. The Commission's authority to prescribe this form is A.R.S. §§10-121.A. YOUR REPORT MUST BE SUBMITTED ON THIS ORIGINAL FORM. Make changes or corrections where necessary for the report should reflect the current status of the corporation. See instructions on page 4 for proper format.

**1.**
F-0793473-7
ALLIED WASTE NORTH AMERICA, INC.
15880 N GREENWAY-HAYDEN LOOP
#100
SCOTTSDALE, AZ   85260

**Business Phone:** _____ (Business phone is optional.)

**State of Domicile:** DELAWARE    **Type of Corporation:** BUSINESS

**2.**
Statutory Agent: C T CORPORATION SYSTEM
Mailing Address: 2225 N CENTRAL AVE
City, State, Zip: PHOENIX AZ 85012

Physical Address, If Different:
Physical Address:
City, State, Zip: AZ

| ACC USE ONLY | |
|---|---|
| Fee | $ 45.00 |
| Penalty | $ _____ |
| Reinstate | $ _____ |
| Expedite | $ _____ |
| Resubmit | $ _____ |

**Use this box only if appointing a new Statutory**

If appointing a new statutory agent, the new agent MUST consent to that appointment by signing below.

I, (individual) or We, (corporation or limited liability company) having been designated the new Statutory do hereby consent to this appointment until my removal or resignation pursuant to law.

_____
Signature of new Statutory Agent

_____
Printed Name of new Statutory Agent

**3.** **Secondary Address:**

| (Foreign Corporations are REQUIRED to complete this section). | 1201 ORANGE ST WILMINGTON, DE   19801 |

**4.** **CHARACTER OF BUSINESS**

EXHIBIT
6

tabbies

.. 1/12/2007

F-0793473-7  ALLIED WASTE NORTH AMERICA, INC.

**5. CAPITALIZATION:** (Business Corporations and Business Trusts are **REQUIRED** to complete this section.)

Business trusts must indicate the number of transferable certificates held by trustees evidencing their benefic the trust estate. Please examine the corporation's original Articles of Incorporation for the amount of shares Review all corporation amendments to determine if the original number of shares has changed. Examine the minutes for the number of **shares issued.**

| Number of Shares/Certificates **Authorized** | Class | Series Within Class (if any) |
|---|---|---|
| 1000 | COMMON STOCK | |

| Number of Shares/Certificates **Issued** | Class | Series Within Class (if any) |
|---|---|---|
| 1000 | COMMON STOCK | |

**6. SHAREHOLDERS:** (Business Corporations and Business Trusts are **REQUIRED** to complete this section.)

List shareholders holding more than 20% of any class of shares issued by the corporation, or having more beneficial interest in the corporation.

ALLIED WASTE INDUSTRIES

**7. OFFICERS**

Name: JO LYNN WHITE
Title: OTHER OFFICER
Address: 15880 N. GREENWAY-HAYDEN LOOP
#100
SCOTTSDALE, AZ 85260
Date Taking Office: 03/04/1999

Name: JOHN J. ZILLMER
Title: PRESIDENT/CEO
Address: 15880 N GREENWAY HAYI
STE 100
SCOTTSDALE, AZ 8526(
Date Taking Office: 05/27/200£

Name: STEVEN M HELM
Title: SECRETARY
Address: 15880 N. GREENWAY-HAYDEN LOOP
#100
SCOTTSDALE, AZ 85260
Date Taking Office: 11/01/1996

Name: MICHAEL S. BURNETT
Title: TREASURER
Address: 15880 N. GREENWAY-HAI
#100
SCOTTSDALE, AZ 8526(
Date Taking Office: 02/27/200(

**8. DIRECTORS**

Name: STEVEN M HELM
Address: 15880 N. GREENWAY-HAYDEN LOOP
#100
SCOTTSDALE, AZ 85260
Date Taking Office: 02/12/1998

Name: PETER S HATHAWAY
Address: 15880 N. GREENWAY-HAI
#100
SCOTTSDALE, AZ 8526(
Date Taking Office: 08/18/200£

F-0793473-7  ALLIED WASTE NORTH AMERICA, INC.
Additional officers and directors:

## OFFICERS:

Name: DALE L PARKER
Title: VICE-PRESIDENT
Address: 15880 N. GREENWAY-HAYDEN LOOP
         #100
         SCOTTSDALE, AZ  85260
Date Taking Office: 11/09/2001

Name: DONALD W SLAGER
Title: VICE-PRESIDENT
Address: 15880 N. GREENWAY-HA
         #100
         SCOTTSDALE, AZ  8526(
Date Taking Office: 02/26/199(

Name: PETER S HATHAWAY
Title: VICE-PRESIDENT
Address: 15880 N. GREENWAY-HAYDEN
         #100
         SCOTTSDALE, AZ  85260
Date Taking Office: 08/18/2003

Name: STEVEN M. HELM
Title: VICE-PRESIDENT
Address: 15880 N. GREENWAY-HA
         #100
         SCOTTSDALE, AZ  8526(
Date Taking Office: 11/01/199(

Name: MICHAEL S. BURNETT
Title: VICE-PRESIDENT
Address: 15880 N. GREENWAY-HAYDEN LOOP
         #100
         SCOTTSDALE, AZ  85260
Date Taking Office: 02/27/2006

Name:
Title:
Date Taking Office:

Name:
Title:
Address:
Date Taking Office:

Name:
Title:
Address:
Date Taking Office:

## DIRECTORS:

Name:
Address:
Date Taking Office:

Name:
Address:
Date Taking Office:

Name:
Address:
Date Taking Office:

Name:
Address:
Date Taking Office:

Name:
Address:
Date Taking Office:

Name:
Address:
Date Taking Office:

F-0793473-7   ALLIED WASTE NORTH AMERICA, INC.

**9. FINANCIAL DISCLOSURE (A.R.S. §10-11622.A.9)**
Nonprofit corporations **must attach** a financial statement (e.g. income/expense statement, balance sheet including asse
All other forms of corporations are exempt from filing a financial disclosure.

**9A. MEMBERS (A.R.S. § 10-11622.A.6)**

| Only Nonprofit Corporations must answer this question. |    This corporation **DOES** ☐, **DOES NOT** ☐ ha

**10. CERTIFICATE OF DISCLOSURE (A.R.S. §§10-1622.A.8 & 10-11622.A.7)**
Has ANY person serving either by election or appointment as an officer, director, trustee, incorporator and/or person control
more than 10% of the issued and outstanding common shares or 10% of any other proprietary, beneficial or membership
corporation been: [Underlined portion pertains to business corporations only]

1.  Convicted of a felony involving a transaction in securities, consumer fraud or antitrust in any state or federal jurisdic
    seven year period immediately preceding the execution of this certificate?
2.  Convicted of a felony, the essential elements of which consisted of fraud, misrepresentation, theft by false pretenses
    trade or monopoly in any state or federal jurisdiction in the seven year period immediately preceding execution of t
3.  Or are subject to an injunction, judgment, decree or permanent order of any state or federal court entered within t
    period immediately preceding execution of this certificate where such injunction, judgment, decree or permanent ord
    violation of:
    (a) fraud or registration provisions of the securities laws of that jurisdiction, or
    (b) the consumer fraud laws of that jurisdiction, or
    (c) the antitrust or restraint of trade laws of that jurisdiction?

                                        | One box must be marked: |   **YES** ☐

If "YES", the following information must be submitted as an attachment to this report for each person subj
more of the actions stated in Items 1. through 3. above.

1.  Full name and prior names used.              5.   Date and location of birth.
2.  Full birth name.                             6.   Social Security Number.
3.  Present home address.                         7.   The nature and description of each conviction or ju
4.  Prior addresses (for immediate                    the date and location, the court and public agency
    preceding 7 year period).                         the file or cause number of the case.

**11. STATEMENT OF BANKRUPTCY, RECEIVERSHIP or CHARTER REVOCATION (A.R.S. §§10-202.D.2,**
**10-1623 & 10-11623)**

A) Has the corporation filed a petition for bankruptcy or appointed a receiver? | One box must be marked: |  **YES** ☐
B) Has any person serving as an officer, director, trustee or incorporator of the corporation served in any such capaci
controlled over 20% of the issued and outstanding common shares, or 20% of any other proprietary, beneficial or memb
in any corporation which has been placed in bankruptcy, receivership or had its charter revoked, or administratively/judic
by any state or jurisdiction?

[Underlined portion pertains to business corporations only]        | One box must be marked: |  **YES** ☐

If "YES" to A and/or B, the following information **must be submitted** as an attachment to this report for each per
statement above.
1.  The names and addresses of each corporation and the person or persons involved. (e.g. officer, director,
    stockholder)
2.  The state in which each corporation was a) incorporated b) transacted business.
3.  The dates of corporate operation.
4.  If any involved person (listed in #1) has been involved in any other bankruptcy proceeding within the past ye
    address of each corporation.
5.  Date, Case number and Court where the bankruptcy was filed or receiver appointed.
6.  Name and address of court appointed receiver.

**12 SIGNATURES:**    Annual Reports must be signed and dated by at least one duly authorized officer or they will t

I declare, under penalty of law that all corporate income tax returns required by Title 43 of the Arizona Revised S
been filed with the Arizona Department of Revenue. I further declare under penalty of law that I (we) have examin
and the certificate, including any attachments, and to the best of my (our) knowledge and belief they are true
complete.

JO LYNN WHITE                    04/07/2006